## WILSON *v.* NELSON.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

No. 31.   Submitted April 22, 1901.—Decided December 9, 1901.

When a debtor, years before the filing of a petition in bankruptcy, gives to a creditor an irrevocable power of attorney to confess judgment after maturity upon a promissory note of the debtor; and the creditor, within four months before the filing of the petition in bankruptcy against the debtor, obtains such a judgment and execution thereon; and the debtor fails, at least five days before a sale on the execution, to vacate or discharge the judgment, or to file a voluntary petition in bankruptcy; the judgment and execution are a preference " suffered or permitted " by the debtor, within 'the meaning of the bankrupt act of July 1, 1898, c. 541, § 3, cl. 3, and the debtor's failure to vacate or discharge the preference so obtained is an act of bankruptcy under that act.

THE Circuit Court of Appeals for the Seventh Circuit certified to this court the following statement of facts and questions of law :

" On February 5, 1885, Cassius B. Nelson executed and delivered to Sarah Johnstone his promissory note in writing for the sum of $8960, payable 'five years or before after date,' with interest at the rate of four per cent per annum until paid. To this note was attached an irrevocable power of attorney, duly executed by the said Nelson under his hand and seal in the usual form, authorizing any attorney of any court of record in his name to confess judgment thereon after maturity of the

note. This note was given for so much money at the time loaned to Nelson, and the interest on the note was paid from time to time up to November 1, 1898. Nelson was a trader, and entered into business as such at the city of Madison, Wisconsin, soon after the giving of the note, and carried on such business until his stock in trade was levied upon by the sheriff under execution as hereinafter stated. On November 1, 1898, Nelson, as he well knew, was and had long been insolvent, and thereafter continued to be and is now insolvent, his liabilities largely exceeding his assets.

" On November 21, 1898, Sarah Johnstone caused judgment to be duly entered in the circuit court of the State of Wisconsin for the county of Dane against said Nelson upon the note and warrant of attorney aforesaid for the sum of $8975, damages and costs, being the face of the note and $15 costs. Upon that judgment execution was immediately thereafter issued out of the court to the sheriff of that county, who thereunder and by authority thereof on the same day levied upon the stock and goods of Nelson, and thereafter and on December 15, 1898, sold the same at public auction, and applied the proceeds thereof, to wit, the sum of $4400, upon and in part payment of the judgment so rendered. This proceeding left the said Nelson without means to meet any other of his obligations. The judgment was so entered, and the levy made, without the procurement of Nelson and without his knowledge or consent. Such judgment was not subject to attack by Nelson, and could not have been vacated or discharged by any legal proceedings which might have been instituted by him in that behalf, nor could the levy under the execution issued upon such judgment have been set aside or vacated by Nelson, except by his filing his voluntary petition in bankruptcy prior to the sale and obtaining an adjudication of bankruptcy thereunder, or by payment of the judgment.

" On December 10, 1898, creditors of the said Nelson, of the requisite number and holding debts against him to the requisite amount, filed their petition against the said Nelson in the District Court of the United States for the Western District of Wisconsin, sitting in bankruptcy, to procure an adjudication against

him as a bankrupt. The act of bankruptcy therein alleged was in substance that while insolvent he suffered and permitted the said Sarah Johnstone, one of his creditors, to obtain preference upon his property through legal proceedings by the entry of the said judgment and the levy thereunder upon his stock of goods, and failed to vacate or discharge the preference obtained through such legal proceedings at least five days before the sale of the property under such judgment and execution. Upon issue joined the District Court ruled that the said Nelson had not, by reason of the premises, committed an act of bankruptcy, and this ruling is before us for review.

" The questions of law upon which this court desires the advice and instruction of the Supreme Court are :

" 1. Whether the said Cassius B. Nelson, by failure to file his voluntary petition in bankruptcy before the sale under such levy, and to procure thereon an adjudication of bankruptcy, or by his failure to pay and discharge the judgment before the sale under such levy, committed an act of bankruptcy, within the meaning of section 3*a*, subdivision (3), of the Bankrupt Act.

" 2. Whether the judgment so entered and the levy of the execution thereon was a preference ' suffered ' or ' permitted ' by the said Nelson within the meaning of clause (3) of section 3*a* of the Bankrupt Law.

" 3. Whether the failure of Nelson to vacate and discharge the preference so obtained, if it was one, at least five days before the execution sale, was an act of bankruptcy."

*Mr. James M. Flower, Mr. Harrison Musgrave,* and *Mr. Daniel K. Tenney* for appellants.

*Mr. William F. Vilas* and *Mr. R. M. Bashford* for appellee.

Mr. JUSTICE GRAY, after making the above statement, delivered the opinion of the court.

On February 5, 1885, Nelson, in consideration of so much

money then lent to him by Sarah Johnstone, executed and delivered to her his promissory note for the sum of $8960, payable in five years with interest until paid. Attached to that note was an irrevocable power of attorney, executed by Nelson, in the usual form, authorizing any attorney of a court of record in his name to confess judgment thereon after its maturity. The interest on the note was paid until November 1, 1898. At that date Nelson, as he well knew, was, and long had been, and ever since continued to be, insolvent. On November 21, 1898, Sarah Johnstone caused judgment to be duly entered in a court of Wisconsin upon the note and the warrant of attorney for the face of the note and costs. Upon that judgment, execution was issued to the sheriff, who on the same day levied on Nelson's goods, and on December 15, 1898, sold the goods by auction, and applied the proceeds thereof in part payment of the judgment. This proceeding left Nelson without means to meet any other of his obligations. The judgment was entered, and the levy made, without the procurement of Nelson, and without his knowledge or consent. The judgment and levy were unassailable in law, and could not have been vacated or discharged by any legal proceedings, except by his voluntary petition in bankruptcy. On December 10, 1898, a petition in bankruptcy was filed against Nelson; and the questions certified present, in various forms, the question whether Nelson committed an act of bankruptcy, within the meaning of section 3, cl. 3, of the Bankrupt Act of 1898.

In considering these questions, strict regard must be had to the provisions of that act, which, as this court has already had occasion to observe, differ in important respects from those of the earlier bankrupt acts. *Bardes* v. *Hawarden Bank*, 178 U. S. 524; *Bryan* v. *Bernheimer*, 181 U. S. 188; *Wall* v. *Cox*, 181 U. S. 244; *Pirie* v. *Chicago Co.*, 182 U. S. 438.

In section 3 of the Bankrupt Act of July 1, 1898, c. 541, acts of bankruptcy are defined as follows : " Acts of bankruptcy by a person shall consist of his having (1) conveyed, transferred, concealed or removed, or permitted to be concealed or removed, any part of his property with intent to hinder, delay or defraud his creditors, or any of them ; or (2) transferred, while insol-

vent, any portion of his property to one or more of his creditors with intent to prefer such creditors over his other creditors; or (3) suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings, and not having, at least five days before a sale or final disposition of any property affected by such preference, vacated or discharged such preference; or (4) made a general assignment for the benefit of his creditors; or (5) admitted in writing his inability to pay his debts and his willingness to be adjudged a bankrupt on that ground."

In the first and second of these an intent on the part of the bankrupt, either to hinder, delay or defraud his creditors, or to prefer over other creditors, is necessary to constitute the act of bankruptcy. But in the third, fourth and fifth no such intent is required.

The third, which is that in issue in the case at bar, is in these words: " (3) suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings, and not having, at least five days before a sale or final disposition of any property affected by such preference, vacated or discharged such preference."

By the corresponding provision of the Bankrupt Act of 1867, any person who, being bankrupt or insolvent, or in contemplation of bankruptcy or insolvency, " procures or suffers his property to be taken on legal process, with intent to give a preference to one or more of his creditors," " or with the intent, by such disposition of his property, to defeat or delay the operation of this act," was deemed to have committed an act of bankruptcy. Act of March 2, 1867, c. 176, § 39, 14 Stat. 536; Rev. Stat. § 5021.

The act of 1898 differs from that of 1867 in wholly omitting the clauses " with intent to give a preference to one or more of his creditors " or " to defeat or delay the operation of this act; " and in substituting for the words " procures or suffers his property to be taken on legal process," the words " suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings," and not having, five days before a sale of the property affected, " vacated or discharged such preference."

There is a similar difference in the two statutes in regard to the preferences declared to be avoided.

The act of 1867 enacted that if any person, being insolvent, or in contemplation of insolvency, within four months before the filing of the petition by or against him, "with a view to give a preference to any creditor or person having a claim against him, or who is under any liability for him, procures or suffers any part of his property to be attached, sequestered or seized on execution," or makes any payment, pledge or conveyance of any part of his property, the person receiving such payment, pledge or conveyance, or to be benefited thereby, "or by such attachment," having reasonable cause to believe that such person is insolvent and that the same is made in fraud of this act, the same should be void and the assignee might recover the property. Act of March 2, 1867, c. 176, § 35, 14 Stat. 534; Rev. Stat. § 5128.

The corresponding provisions of the act of 1898 omit the requisite of the act of 1867, "with a view to give a preference."

Section 60 of the act of 1898, relating to "preferred creditors," begins by providing that "a person shall be deemed to have given a preference, if, being insolvent, he has procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

Section 67, relating to "liens," provides, in subdivision c, as follows: "A lien created by, or obtained in, or pursuant to, any suit or proceeding at law or in equity, including an attachment upon mesne process, or a judgment by confession, which was begun against a person within four months before the filing of the petition in bankruptcy, by or against such person, shall be dissolved by the adjudication of such person to be a bankrupt, if (1) it appears that said lien was obtained and permitted while the defendant was insolvent, or that its existence and enforcement will work a preference, or (2) the party or parties to be benefited thereby had reasonable cause to believe the defendant

was insolvent and in contemplation of bankruptcy, or (3) that such lien was sought and permitted in fraud of the provisions of this act."

The same section provides, in subdivision f, "that all levies, judgments, attachments or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void, in case he is adjudged a bankrupt." This provision evidently includes voluntary, as well as involuntary bankrupts; for the first clause of the first section of the act, defining the meaning of words and phrases used in the act, declares that " ' a person against whom a petition has been filed' shall include a person who has filed a voluntary petition."

Taking together all the provisions of the act of 1898 on this subject, and contrasting them with the provisions of the act of 1867, there can be no doubt of their meaning.

The third clause of section 3, omitting the word " procure," and the phrase "intent to give a preference," of the former statute, makes it an act of bankruptcy if the debtor has " suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings," and has not " vacated or discharged such preference " five days before a sale of the property. By section 60, he is " deemed to have given a preference " if, being insolvent, he has " suffered a judgment to be entered against himself in favor of any person," " and the effect of the enforcement of such judgment " " will be to enable any one of his creditors to obtain a greater percentage of his debt " than other creditors. By section 67, subdivision c, a lien obtained in any suit, " including an attachment upon mesne process, or a judgment by confession," begun within four months before the filing of the petition in bankruptcy, is dissolved by the adjudication in bankruptcy, not only if " such lien was sought and permitted in fraud of the provisions of ' this act," but also if " its existence and enforcement will work a preference." And by subdivision f of the same section " all levies, judgments, attachments or other liens, obtained through legal proceedings against a person who is insolvent," within the four months,

shall be deemed null and void in case he is adjudged a bankrupt.

The act of 1898 makes the result obtained by the creditor, and not the specific intent of the debtor, the essential fact.

In the case at bar, the warrant of attorney to confess judgment was indeed given by the debtor nearly thirteen years before. But being irrevocable and continuing in force, the debtor thereby, without any further act of his, " suffered or permitted " a judgment to be entered against him, within four months before the filing of the petition in bankruptcy, the effect of the enforcement of which judgment would be to enable the creditor to whom it was given to obtain a greater percentage of his debt than other creditors; and the lien obtained by which, in a proceeding begun within the four months, would be dissolved by the adjudication in bankruptcy, because "its existence and enforcement will work a preference." And the debtor did not, within five days before the sale of the property on execution, vacate or discharge such preference, or file a petition in bankruptcy. By failing to do so, he confessed that he was hopelessly insolvent, and consented to the preference that he failed to vacate.

The cases on which the appellee relies, of *Wilson* v. *City Bank*, 17 Wall. 473; *Clark* v. *Iselin*, 21 Wall. 360, and *National Bank* v. *Warren*, 96 U. S. 539, have no application, because they were decided under the act of 1867, which expressly required the debtor to have acted with intent to give a preference.

The case of *Buckingham* v. *McLean*, 13 How. 150, arose under the still earlier Bankrupt Act of August 19, 1841, c. 9, § 2. 5 Stat. 442. And the point there decided was that a power of attorney to confess a judgment was an act of the bankrupt creating a " security," which that bankrupt act in express terms declared void only if made in contemplation of bankruptcy and for the purpose of giving a preference or priority over general creditors.

The careful change in the language of the provisions of the Bankrupt Act of 1898 from those of the former Bankrupt Acts upon the subject must have been intended by Congress to prevent a debtor from giving a creditor an irrevocable warrant of attorney which would enable him, at any time, during the in-

SHIRAS, J., THE CHIEF JUSTICE, BREWER and PECKHAM, JJ., dissenting.

solvency of the debtor, and within four months before a petition in bankruptcy, to obtain a judgment and levy the execution on all the property of the bankrupt, to the exclusion of his other creditors.

> *The answer to the second and third questions certified must be that the judgment so entered and the levy of the execution thereon were a preference " suffered or permitted " by Nelson, within the meaning of clause 3 of section 3 of the Bankrupt Act; and that the failure of Nelson to vacate and discharge, at least five days before the sale on execution, the preference so obtained, was an act of bankruptcy; and it becomes unnecessary to answer the first question.   Second and third questions answered in the affirmative.*

MR. JUSTICE SHIRAS, with whom concurred THE CHIEF JUSTICE, MR. JUSTICE BREWER, and MR. JUSTICE PECKHAM, dissenting.

On February 5, 1885, Cassius B. Nelson made and delivered to Sarah Johnstone his promissory note for the sum of $8960, payable in five years, with interest at the rate of four per cent per annum until paid.   To this note was attached an irrevocable power of attorney, duly executed by said Nelson under his hand and seal in the usual form, authorizing any attorney of any court of record in his name to confess judgment thereon after maturity of the note.   This note was given for so much money at the time loaned to Nelson.   The interest on the note was paid from time to time up to the 1st day of November, 1898.

On November 21, 1898, Sarah Johnstone caused judgment to be duly entered in the circuit court of the county of Dane, State of Wisconsin, against said Nelson upon the note and warrant of attorney aforesaid for the sum of $8975.   Upon that judgment execution was immediately issued out of the court to the sheriff of that county, who levied upon the stock and goods of Nelson, and on December 15, 1898, sold the same at public auction and applied the proceeds thereof, to wit, the sum of $4400, upon and in part payment of the judgment so rendered.

Shiras, J., The Chief Justice, Brewer and Peckham, JJ., dissenting.

It is admitted that such a judgment note was, at the time it was made and delivered under the law of the State of Wisconsin, a legal and usual form of security for money loaned. *McCaul* v. *Thayer*, 70 Wisconsin, 138; *Second Ward Savings Bank* v. *Schranck*, 97 Wisconsin, 250.

It is also admitted that the judgment was executed, and the levy made without the procurement of Nelson, and without his knowledge or consent, and that such judgment was not subject to attack by Nelson and could not have been vacated or discharged by any legal proceedings which might have been instituted by him, nor could the levy issued under the execution have been set aside or vacated by Nelson, unless his filing his voluntary petition in bankruptcy prior to the sale, and obtaining an adjudication of bankruptcy thereunder would have had that effect, or by payment of the judgment.

On December 10, 1898, creditors of said Nelson filed a petition in involuntary bankruptcy against him in the District Court of the United States for the Western District of Wisconsin. The act of bankruptcy therein alleged was in substance that while insolvent he suffered and permitted the said Sarah Johnstone, one of his creditors, to obtain preference upon his property through legal proceedings by the entry of said judgment and the levy thereunder upon his stock of goods, and failed to vacate or discharge the preference obtained through such legal proceedings at least five days before the sale of the property under such judgment and execution. Upon issue joined, the District Court ruled that Nelson had not, by reason of the premises, committed an act of bankruptcy, and dismissed the petition. An appeal was taken to the United States Circuit Court of Appeals for the Seventh Circuit, and that court has certified certain questions for the consideration of this court.

The essential question in the case is whether, under the facts disclosed, Nelson was guilty of an act of bankruptcy in failing to file a petition in voluntary bankruptcy. This question must be answered in the negative if we respect previous decisions of this court in similar cases.

The subject was considered in *Buckingham* v. *McLean*, 13 How. 151. The case arose under the Bankrupt Act of 1841,

SHIRAS, J., THE CHIEF JUSTICE, BREWER and PECKHAM, JJ., dissenting.

and it appeared that one John Mahard had (on April 7, 1842) executed a power of attorney to confess judgment in favor of Buckingham for $14,000; judgment was entered the next day; execution was issued April 20, and levy was made and sale of property, real and personal. On May 27, 1842, Mahard petitioned to be declared a bankrupt.

There were other questions in the case, but Mr. Justice Curtis, in his discussion of the question now before us, and speaking for the court, made the following observations:

"In many of the States, a bond and warrant of attorney to enter up a judgment is a usual mode of taking security for a debt, and judgments thus entered are treated as securities, and an equitable jurisdiction exercised over them by courts of law. In some States, they operate only as a lien on the lands of the debtor, in others on his personal estate also, (*Brown* v. *Clark*, 4 How. 4;) and wherever, by the local law, a judgment or an execution operates to make a lien on property, we are of opinion it is to be deemed a security; and when rendered upon confession, under a power given by the debtor for that purpose, it is a security, made or given by him within the meaning of the bankrupt act, and is void, if accompanied by the facts made necessary by that act to render securities void. These facts are, that the security was given 'in contemplation of bankruptcy, and for the purpose of giving any creditor, endorser, surety or other person a preference or priority over the general creditors of such bankrupt.'

"The inquiry, whether this security was given in contemplation of bankruptcy, involves the question what is meant by these words? It is understood that, while the bankrupt law was in operation, different interpretations were placed upon them in different circuits. By some judges they were held to mean contemplation of insolvency—of a simple inability to pay as debts should become payable—whereby his business would be broken up; this was considered to be a state of bankruptcy, the contemplation of which was sufficient. By other judges it was held that the debtor was contemplating an act of bankruptcy, or a voluntary application for the bankrupt law. It is somewhat remarkable that this question should be presented

for the first time for the decision of this court after the law has been so long repealed, and nearly all proceedings under it terminated. Perhaps the explanation may be found in the fact that when securities have been given within two months before a petition by or against a debtor, the evidence would usually bring the case within either interpretation of the law. However this may be, it is now presented for decision; and we are of opinion that, to render the security void, the debtor must have contemplated an act of bankruptcy, or an application by himself to be decreed a bankrupt.

"Under the common law, conveyances by a debtor to *bona fide* creditors are valid, though the debtor has become insolvent and failed, and makes the conveyance for the sole purpose of giving a preference over his other creditors. This common law right, it was the object of the second section of the act to restrain; but, at the same time, in so guarded a way as not to interfere with transactions consistent with the reasonable accomplishment of the objects of the act. To give to these words, 'contemplation of bankruptcy,' a broad scope and somewhat loose meaning, would not be in furtherance of the general purpose with which they were introduced.

"The word bankruptcy occurs many times in this act. It is entitled 'An act to establish a uniform system of bankruptcy.' And the word is manifestly used in *other* parts of the law to describe a particular *status*, to be ascertained and declared by a judicial decree. It cannot be easily admitted that this very precise and definite term is used in *this* clause to signify something quite different. It is certainly true in point of fact that even a merchant may contemplate insolvency and the breaking up of his business, and yet not contemplate bankruptcy. He may confidently believe that his personal character, and the state of his affairs, and the disposition of his creditors, are such that when they shall have examined into his condition they will extend the times of payment of their debts and enable him to resume business. A person not a merchant, banker, etc., and consequently not liable to be proceeded against and made a bankrupt, though insolvent, may have come to a determination that he will not petition. The contemplation of one of these states,

SHIRAS, J., THE CHIEF JUSTICE, BREWER and PECKHAM, JJ., dissenting.

not being in fact the contemplation of the other, to say that both were included in a term which describes only one of them, would be a departure from sound principles of interpretation. Moreover, the provisos in *this* section tend to show what was the real meaning of the first enacting clause. The object of these provisos was to protect *bona fide* dealings with the bankrupt more than two months before the filing of the petition by or against him, provided the other party was ignorant of such an intent on the part of the bankrupt as made the security invalid under the first enacting clause. And the language is: 'Provided, that the other party to any such dealings or transactions had no notice of a prior act of bankruptcy or of the intention of the bankrupt to take the benefit of this act.' These facts, of one of which a *bona fide* creditor must have notice, to render his security void, if taken more than two months before the filing of the petition, can hardly be supposed to be different from the facts which must exist to render the security void under the *first* clause; or, in other words, if it be enough for the debtor to contemplate an act of insolvency it could hardly be required that the creditor should have notice of an act of bankruptcy or an intention to take the benefit of the act. It would seem that notice to the creditor of what is sufficient to avoid the security must deprive him of its benefits, and, consequently, if he must have notice of something more than insolvency, something more than insolvency is required to render the security invalid, and that we may safely take this description of the facts which a creditor must have notice of to avoid the security as descriptive also of what the bankrupt must contemplate to render it void.

" In construing a similar clause in the English bankrupt law, there have been conflicting decisions. It has been held that contemplation of a state of insolvency was sufficient. *Pulling* v. *Tucker*, 4 B. & Ald. 382; *Poland* v. *Glyn*, 2 Dow. & Ry. 310. But both the earlier and later decisions were otherwise, and, in our judgment, they contain the sounder rule. *Fidgeon* v. *Sharpe*, 5 Taunt. 545; *Hartshorn* v. *Shodden*, 2 Bos. & Pul. 582; *Gibbons* v. *Phillips*, 7 B. & C. 529; *Balcher* v. *Brittie*, 10 Bing.

408; *Morgan* v. *Brandrett*, 5 B. & M. 297.   And see the opinion of Patterson, J., in the last case.

"Considering, then, that it is necessary to show that the debtor contemplated an act of bankruptcy, or a decree adjudging him a bankrupt on his own petition, at what time in this case must he have had this in contemplation ?   He gave the power of attorney on the 7th of April; the judgment was confessed and entered up the next day; the execution was taken out and levied, and the lien created thereby on the 22d of May; and five days afterwards, being less than two months after the execution of the power, the debtor presented the petition under which he was decreed a bankrupt.   The only act done by the debtor was the execution and delivery of the power of attorney. It was a security by him made or given only by reason of that instrument.   What followed were acts of the creditors and of officers of the law, with which the debtor is no more connected than with the delivery by the creditor of a deed to the office of the register to be recorded, or the act of the register in recording it.   It would seem that if the *intent* of the debtor is to give a legal qualification to a transaction, it must be an intent accompanying an act done by himself, and not an intent or purpose arising in his mind afterwards, while third persons are acting ; and, that consequently, we must inquire whether the debtor contemplated bankruptcy when he executed the power.

"It is true this contention would put it in the power of creditors, by taking a bond and warrant of attorney, while the debtor was solvent and did not contemplate bankruptcy, to enter up a judgment and issue execution, and by a levy acquire a valid lien, down to the very moment when the title of the assignee began.   But this was undoubtedly so under the statute of James, which, like ours, contained no provision to meet this mischief; and it became so great that, by the one hundred and fifth section of the revising act of 6 Geo. IV, it was enacted that ' no-creditor, though for a valuable consideration, who shall sue out execution on any judgment obtained by default, confession or *nil dicit*, shall avail himself of such execution, to the prejudice of other fair creditors, but shall be paid ratably

SHIRAS, J., THE CHIEF JUSTICE, BREWER and PECKHAM, JJ., dissenting.

with such creditors.' If the Bankrupt Act of 1841 had continued to exist, a similar addition to its provisions would doubtless have become necessary."

This suggestion of Justice Curtis was justified by provisions contained in the bankruptcy acts of 1867 and 1898, which enacted that liens obtained by attachments upon *mesne process*, or judgment by confession, within four months before the filing of the petition in bankruptcy, by or against the creditor, shall be dissolved by the adjudication of the debtor to be a bankrupt, if it appear that such a lien was *procured or suffered*, *obtained* and *permitted*, while the debtor was insolvent and contemplating bankruptcy, the party or parties to be benefited thereby having reasonable cause to believe that the debtor was insolvent and in contemplation of insolvency. But, as we shall presently see, such provisions do not affect the question before us now.

In *Wilson* v. *City Bank,* 17 Wall. 473, decided under the provisions of the act of 1867, it was *held*, that something more than passive non-resistance in an insolvent debtor is necessary to invalidate a judgment and levy on his property, when the debt is due and he has no defence; and that in such case there is no legal obligation on the debtor to file a petition in bankruptcy to prevent the judgment and levy, and a failure to do so is not sufficient evidence of an intent to give a preference to the judgment creditor, or to defeat the operation of the bankrupt law. In his opinion, discussing the facts of the case, Mr. Justice Miller said:

"There is nothing morally wrong in the course of the defendants in this matter. They were sued for a just debt. They had no defence to it, and they made none. To have made an effort, by dilatory or false pleas, to delay a judgment in the state court, would have been a moral wrong and a fraud upon the due administration of the law. There was no obligation upon them to do this, either in law or in ethics. Any other creditor whose debt was due could have sued as well as this one, and any of them could have instituted compulsory bankrupt proceedings. The debtor neither hindered nor facilitated any one of them. How is it possible to infer, logically, an ac-

tual purpose to prefer one creditor to another, or to hinder or delay the operation of the bankrupt act?

" It is said, however, that such an intent is a legal inference from such inaction by the debtor, necessary to the successful operation of the bankrupt law; that the grand feature of that law is to secure equality of distribution among creditors in all cases of insolvency, and that, to secure this, it is the legal duty of the insolvent, when sued by one creditor in an ordinary proceeding likely to end in judgment and seizure of property, to file himself a petition of voluntary bankruptcy, and that this duty is to be inferred from the spirit of the law, and is essential to its successful operation.

" The argument is not without force, and has received the assent of a large number of the district judges, to whom the administration of the bankrupt law is more immediately confided. We are, nevertheless, not satisfied of its soundness. We have already said that there is no moral obligation on the part of the insolvent to do this, unless the statute requires it, and then only because it is a duty imposed by law. It is equally clear that there is no such duty imposed by the act in express terms. It is, therefore, an argument solely of implication. This implication is said to arise from the supposed purpose of the statute to secure equality of distribution in *all cases* of insolvency, and to make the argument complete, it is further necessary to hold that this can only be done in bankruptcy proceedings under that statute. Does the statute justify so broad a proposition? Does it in effect forbid all proceedings to collect debts in cases of insolvency, in other courts, and in all other modes than by bankruptcy? We do not think that its purpose of securing equality of distribution is designed to be carried so far. As before remarked, the voluntary clause is wholly voluntary. No intimation is given that the bankrupt *must* file a petition under any circumstances. While his *right* to do so is without any other limit than his own sworn averment that he is unable to pay all his debts, there is not a word from which we can infer any legal obligation on him to do so. Such an obligation would take from the right the character of a privilege, and confer on it that of a burdensome and, often, ruinous duty. It is, in its es-

SHIRAS, J., THE CHIEF JUSTICE, BREWER and PECKHAM, JJ., dissenting.

sence, involuntary bankruptcy. But the initiation in this kind of bankruptcy is, by the statute, given to the creditor, and is not imposed on the debtor. And it is only given to the creditor in a limited class of cases. The argument we are combatting goes upon the hypothesis that there is another class given to the creditor by inference, namely, where the debtor ought himself to go into court as a bankrupt and fails to do it. We do not see the soundness of this implication from anything in the statute.

"We do not construe the act as intended to cover *all* cases of insolvency to the exclusion of other judicial proceedings. It is very liberal in the classes of insolvents which it does include, and needs no extension in this direction by implication. But it still leaves, in a great majority of cases, parties who are really insolvent to the chances that their energy, care and prudence in business may enable them finally to recover without disastrous failure or positive bankruptcy. All experience shows both the wisdom and justice of this policy. Many find themselves with ample means, good credit, large business, technically insolvent, that is, unable to meet their current obligations as fast as they mature. But by forbearance of creditors, by meeting only such debts as are pressed, and even by the submission of some of their property to be seized on execution, they are finally enabled to pay all, and to save their commercial character and much of their property. If creditors are not satisfied with this, and the parties have committed an act of bankruptcy, any creditor can institute proceedings in a bankrupt court. But until this is done, their honest struggle to meet their debts and to avoid the breaking up of all their business is not, of itself, to be construed an act of bankruptcy or a fraud upon the act.

"It is also argued that inasmuch as to lay by and permit one creditor to obtain judgment and levy on property necessarily gives that creditor a preference, the debtor must be supposed to intend that which he knows will follow. The general legal proposition is true, that where a person does a positive act, the consequence of which he knows beforehand, that he must be held to intend those consequences. But it cannot be inferred that a man intends, in the sense of desiring, prosecuting or pro-

curing it, a result of other persons' acts, when he contributes nothing to their success or completion, and is under no legal or moral obligation to hinder or prevent them.

"Argument confirmatory to these views may be seen in the fact that all the other acts or modes of preference of creditors found in both the sections we have mentioned, in direct context with the one we have considered, are of a positive and affirmative character, and are evidences of an active desire or wish to prefer one creditor to another. Why, then, should a passive indifference and inaction, where no action is required by positive law or good morals, be construed into such a preference as the law forbids? The construction thus contended for is, in our opinion, not justified by the words of either of the sections referred to, and can only be sustained by imputing to the general scope of the bankrupt act a harsh and illiberal purpose, at variance with its true spirit and with the policy which prompted its enactment."

The principles of this case were approved and applied in *Clark* v. *Iselin*, 21 Wall. 360, where it was held that the giving by a debtor, for a consideration of equal value, passing at the time, of a warrant of attorney to confess judgment, is not an act of bankruptcy, though such warrant or confession be not entered of record, but to be kept as such things usually are, in the creditor's own custody, and with their existence unknown to others; that the creditor may enter judgment of record thereon when he pleases, even upon insolvency apparent, and issue execution and sell; and that his action is valid and not in fraud of the bankrupt law, unless he is assisted by the debtor.

The facts of that case were, in respect to the question before us, similar to those of the present. In the opinion Mr. Justice Strong, after citing with approval *Wilson* v. *City Bank*, said:

"Now, in a case where a creditor, holding a confession of judgment perfectly lawful when it was given, causes the judgment to be entered of record, how can it be said the *debtor* procures the entry at the time it is made? It is true the judgment is entered in virtue of his authority, an authority given when the confession was signed. That may have been years before, or, if not, it may have been when the debtor was

SHIRAS, J., THE CHIEF JUSTICE, BREWER and PECKHAM, JJ., dissenting.

perfectly solvent. But .no consent is given when the entry is made, where the confession becomes an actual judgment, and when the preference, if it be a preference, is obtained. The debtor has nothing to do with the entry. As to that he is entirely passive. Ordinarily he knows nothing of it, and he could not prevent it if he would. It is impossible, therefore, to maintain that such a judgment is obtained by him *when* his confession is placed on record. Such an assertion, if made, must rest on a mere fiction. And so it has been decided by the Supreme Court of Pennsylvania. *Sleek* v. *Turner's Assignee,* Legal Intelligence, Sept. 25, 1894.

" More than this, as we have seen, in order to make a judgment and execution against an insolvent debtor a preference fraudulent under the law, the debtor must have procured them with a view or intent to give a preference, and that intent must have existed when the judgment was entered. But how can a debtor be said to intend a wrongful preference at the time a judgment is obtained against him when he knows nothing of the judgment? That years before he may have contemplated the possibility that thereafter a judgment might be obtained against him ; that long before he may have given a warrant of attorney to confess a judgment, or by a written confession, as in this case, have put it in the power of his creditor to cause a judgment to be entered against him without his knowledge or subsequent assent, is wholly impertinent to the inquiry whether ' he had in view or intended an unlawful preference at a later time, at the time when the creditor sees fit to cause the judgment to be entered. For, we repeat, it is a fraudulent intent existing in the mind of the debtor at this later time which the act of Congress has in view. The preference must be accompanied by a fraudulent intent, and it is that intent that taints the transaction. Without it the judgment and execution are not void. . . .

. " It has been suggested, in opposition to the view we have taken, that if a creditor may hold a confession of judgment by his debtor, or a warrant of attorney to confess a judgment, without causing it to be entered of record until the insolvency of the debtor appears, the debtor may thereby be able to main-

tain a false credit. If this be admitted, it is not perceived that it has any legitimate bearing upon the question before us. The bankrupt act was not aimed against false credits. It did not prohibit holding judgment bonds and notes without entering judgments thereon until the debtors became embarrassed. Such securities are held in some of the States, amounting to millions upon millions. The bankrupt act had a very different purpose. It was to secure equality of distribution of that which insolvents have when proceedings in bankruptcy are commenced and of that which they have collusively with some of their creditors attempted to withdraw from ratable distribution with intent to prefer some creditors over others."

Similar views prevailed in *National Bank* v. *Warren*, 96 U. S. 539, where it was held that the mere non-resistance of a debtor to judicial proceedings in which a judgment was rendered against him, when the debt was due and there was no valid defence to it, it is not the suffering and giving a preference under the bankrupt act, and that the judgment is not avoided by the facts that he does not file a petition in bankruptcy, and that his insolvency was known to the creditor.

As, then, the power of attorney given by Nelson to Mrs. Johnstone was a valid security, customary under the law of Wisconsin, as it was given long before the passage of the Bankrupt Act of 1898, and, therefore, necessarily without regard to the provisions of that act and without any intention to prevent or defeat their operation, and as the entry of the judgment and the levy of the execution are conceded to have been without the knowledge or consent of Nelson, it is undeniable that, under the provisions of the Bankrupt Act of 1867, and within the principles laid down in *Buckingham* v. *McLean*, *Wilson* v. *City Bank*, *Clark* v. *Iselin*, and *National Bank* v. *Warren*, Nelson was under no obligation, legal or moral, to bring upon himself the ruin necessarily occasioned by a decree of bankruptcy, by filing a voluntary petition, and that the questions certified to us by the Circuit Court of Appeals should be answered in the negative.

But it is claimed that, having regard to the phraseology of the act of 1898, and although the warrant to confess judgment

was given by the debtor before the passage of that act, yet being irrevocable and continuing in force, the debtor thereby, without any further act of his, suffered or permitted a judgment to be entered against him, within four months before the filing of the petition in bankruptcy, and that he confessed that he was hopelessly insolvent, and consented to the preference that he failed to vacate, by failing to file a voluntary petition.

Such a contention, in view of the various decisions of this court and hereinbefore cited, could not have been heretofore maintained, and it is, therefore, imperative that those who now urge it should be able to point to some clear and unmistakable declaration in the existing statute. So important a change in the policy of the bankrupt law must be manifested by explicit language, and cannot be safely and with due regard to sound principles of interpretation, made to depend upon conjecture and inference based upon a mere difference in phraseology between the present and prior acts of bankruptcy. In other words, the question before us must be decided by a consideration of the language actually used in the act of 1898, interpreted in the light of the previous decisions of this court.

We are concerned, in the present case, with section 3 of the act of 1898, which deals with and describes acts of bankruptcy. The section is headed "Acts of Bankruptcy," and then sets forth what are deemed to be acts of bankruptcy, as follows:

"Acts of bankruptcy by a person shall consist of his having (1) conveyed, transferred, concealed or removed, or permitted to be concealed or removed, any part of his property with intent to hinder, delay or defraud his creditors, or any of them; or (2), transferred, while insolvent, any portion of his property to one or more of his creditors with intent to prefer such creditors over his other creditors; or (3), suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings and not having, at least five days before a sale or final disposition of any property affected by such preference, vacated or discharged such preference; or (4), made a general assignment in further benefit of his creditors; or (5), admitted in writing his inability to pay his debts and his willingness to be adjudged a bankrupt on that ground."

It is obvious that Congress here had in view voluntary acts of the debtor—" *acts* of bankruptcy by a person." Concededly clauses 1, 2, 4 and 5 require an affirmative and voluntary act. It would naturally be presumed that the same quality of act would be required by clause 3. The section consists of a single sentence, in which the several clauses all depend upon the leading phrase, " acts of bankruptcy shall consist of having done the several things enumerated in the dependent clauses." An act is defined in the Century Dictionary as " an exertion of energy or force, mental or physical; anything that is done or performed; a doing or deed; an operation or performance." And in the same work " an act of bankruptcy " is defined to be " an act the commission of which by a debtor renders him liable to be adjudged a bankrupt." In Anderson's Law Dictionary the word " act " is defined to be " a thing done or performed; the exercise of power; an effect produced by power exerted; " and it is said, " ' Act ' and ' intention ' may mean the same as ' act,' alone, for act implies intention, as in the expression ' death by his own act or intention.' "

Black's Law Dictionary describes " an act " as follows : " In a more technical sense, it means something done voluntarily by a person, and of such a nature that certain legal consequences attach to it. Thus a grantor acknowledges a conveyance to be his act and deed, the terms being synonymous."

Independently of dictionary definitions, it may be safely said that, in common usage and understanding, the word " act " signifies something done voluntarily, or, in other words, the result of an exercise of the will.

In view, then, of the plain meaning of the language of the clause and of its association, in the section, with other acts which require affirmative and voluntary proceedings on the part of the debtor, it would seem to be clear that mere failure by a debtor, even if insolvent, to file a voluntary petition in bankruptcy, is not, in itself, under the facts conceded to exist in this case, an " act of bankruptcy."

Indeed, it seems quite clear that if section 3 of the act of 1898 had been the first enactment by Congress on the subject, no one would ever have suggested the contrary view. The

SHIRAS, J., THE CHIEF JUSTICE, BREWER and PECKHAM, JJ., dissenting.

contention is mainly, if not wholly, founded on the omission of several words used in the previous statutes, or rather in the substitution of different words in section 3 for those used in the corresponding sections of the earlier laws. Those changes may be made best to appear by presenting them in parallel columns:

ACT OF MARCH 2, 1867, c. 176, 14 STAT. 517.

SEC. 39. That any person . . . who being bankrupt or insolvent, or in contemplation of bankruptcy or insolvency, shall . . . *procure* or *suffer* his property to be taken on legal process, with intent to give a preference to one or more of his creditors, . . . or with the intent by such disposition of his property to defeat or delay the operation of this act, shall be deemed to have committed an act of bankruptcy.

SEC. 35. That if any person, being insolvent or in contemplation of insolvency, within four months before the filing of the petition by or against him, with a view to give a preference to any creditor or person having a claim against him, or who is under any liability for him, procures any part of his property to be attached, sequestered or seized on execution, or makes any payment, pledge, assignment, transfer, or conveyance of any part of his

ACT OF JULY 1, 1898, c. 541, 30 STAT. 544.

SEC. 3. Acts of bankruptcy by a person shall consist of his having . . . *suffered* or *permitted,* while insolvent, any creditor to obtain a *preference* through legal proceedings, and not having, at least five days before a sale or final disposition of any property affected by such preference, vacated or discharged such preference.

SEC. 60. A person shall be deemed to have given a preference, if, being insolvent, he has *procured* or *suffered* a judgment to be entered against himself, in favor of any person, or *made a transfer* of any of his property, and the effect of the enforcement of such judgment or transfer will be to *enable* any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class.

SEC. 67. . . . A lien created by, or obtained in, or pursuant to, any suit or proceeding at law, or in equity, including an

property, either directly or indirectly, absolutely or conditionally, the person receiving such payment, pledge, assignment or conveyance, or to be benefited thereby, or by such attachment, payment, pledge, assignment or conveyance, having reasonable cause to believe such person is insolvent, and that such attachment, payment, pledge, assignment or conveyance is made in fraud of the provisions of this act, the same shall be void.

Sec. 29. . . . No discharge shall be granted if the bankrupt . . . within four months before the commencement of such proceedings, *has procured* his lands, goods, money or chattels to be attached, sequestered or seized on an execution.

attachment on mesne process, or a judgment by confession, which was begun against a person within four weeks before the filing of the petition in bankruptcy, by or against such person, shall be dissolved by the adjudication of such person to be a bankrupt, if it appears that said lien *was obtained and permitted* while the defendant was insolvent, and that its existence and enforcement will work a preference, or the party or parties to be benefited thereby had reasonable cause to believe the defendant was insolvent, and in contemplation of bankruptcy, or that such lien was sought and permitted in *fraud* of the provision of this act.

That all levies, judgments, attachments or other liens obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void, in case he is adjudged a bankrupt.

It having been repeatedly ruled, in the cases cited, that, under these provisions of the act of 1867, no person shall be deemed guilty of an act of bankruptcy except by reason of some affirmative and intentional act intended to defeat the purposes of the act, and that failing to file a voluntary petition in

bankruptcy where a creditor is pursuing, in a state court, a lawful remedy on a lawful security given and received before the act of bankruptcy was passed, and without any knowledge or consent by the debtor to such suit or proceeding, is not an act of bankruptcy, it is now contended that a different conclusion must be reached under the provisions of the act of 1898.

Examination and comparison of the above contrasted provisions will show, as I think, that no change was made by the latter enactment in the vital and decisive purpose that no person shall be visited with the penalty of involuntary bankruptcy unless he has brought himself within the denunciation of the law by some intentional and voluntary act, and that, this being so, the decisions under the previous act, that merely failing to file a voluntary petition is not such voluntary and intentional act in fraud of the statute, are applicable and decisive of the present case.

Arguments based on supposed differences between *permit* and *suffer* and *procure* are too uncertain on which to find that a great and important change in the theory of the bankrupt law was intended by Congress. Such an intention would have been directly and clearly expressed, and not left to uncertain inferences. That such inferences are uncertain plainly appears by the opposite conclusions reached, in respect to the meaning of the clauses in question, by the learned judges of the District and Circuit Courts. See *In re Moyer*, 93 Fed. Rep. 188; *In re Thomas*, 103 Fed. Rep. 272; *In re Nelson*, 98 Fed. Rep. 76; *Duncan* v. *Landis*, Cir. Ct. of Appeals for the Third Circuit.

The case of *Pirie* v. *Chicago Title & Trust Company*, 182 U. S. 438, the most recent decision of this court under the act of 1898, arose under another clause of the act, and is not directly applicable to the question we have here considered, but, so far as it has any bearing, sustains the views herein expressed. The question there was under sec. 60, and it was *held* that where a payment or transfer was made by an insolvent debtor, within four months prior to the filing of a petition in bankruptcy to a creditor who did not have cause to believe that an unlawful preference was intended, the creditor may keep the

payment or transfer, even though the amount of such payment or transfer was thereby withdrawn from the administration of the bankrupt court and satisfaction in full was received by the creditor, but that if such payment was only a partial discharge of his debt, the creditor cannot prove, under the distribution in bankruptcy, for the balance of his debt, unless he first surrenders to the trustee the amount of the partial payment.

The conclusion warranted by the words of the statute, interpreted in this light of our previous decisions, is that the questions certified to us by the Circuit Court of Appeals should be answered in the negative.

THE CHIEF JUSTICE, MR. JUSTICE BREWER and MR. JUSTICE PECKHAM concurred in this dissent.