## Philadelphia National Bank *v.* Taylor (et al., Appellant).

Argued November 19, 1965. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Roderick D. Mathewson,* for appellant.

*E. F. Cantlin,* with him *James C. Brennan,* and *Hinkson & Cantlin,* for appellee.

OPINION BY MR. JUSTICE EAGEN, March 22, 1966:

This appeal presents for decision the order of priority of two judgment liens. The question arose in the lower court by way of exceptions to the sheriff's schedule of distribution of a fund resulting from a sheriff's sale of defendants' Taylors real estate.

The facts are not in dispute.

On March 14, 1956, the Philadelphia National Bank, appellee, entered judgment against J. Irvin Taylor and Bettie Jane Taylor by virtue of the confession of judgment included in a note in the amount of $9050. This judgment was never revived by writ of scire facias or agreement.[1]

On June 5, 1956, W. S. McDowell Company entered judgment against the Taylors in the sum of $500. This judgment was subsequently assigned to Sarah Stein-

---

[1] As to the procedure now required to revive judgments, see Pa. R. C. P. 3025-3034. (Effective April 1, 1965.)

berg, the appellant, and was revived by a writ of scire facias issued July 19, 1961.

At the time both judgments were entered, the Taylors were the record title owners of the real estate involved.

On March 9, 1961, appellee caused a writ of execution to issue on its judgment, which was docketed and indexed. No sale ensued thereon and the writ was voluntarily stayed by appellee's attorney on September 7, 1961.

On March 25, 1964, a second writ of execution issued on the appellee's judgment, pursuant to which the Taylors' real estate was sold on May 22, 1964, creating a fund for distribution (after payment of costs and taxes) in the amount of $1199.69. Both judgment creditors claimed the fund. The sheriff awarded it to the appellee. Exceptions to the schedule of distribution were dismissed in the lower court. On appeal, the Superior Court affirmed, 205 Pa. Superior Ct. 535, 211 A. 2d 1 (1965). We granted allocatur.[2]

The determinative question may be posed thusly: Did the issuance, docketing and indexing of the writ of execution on March 9, 1961, without more, continue the lien of appellee's judgment for an additional five years from that date, or did the lien terminate when the writ was voluntarily stayed?

The law of liens on real estate in Pennsylvania is controlled by the Judgment Lien Law, Act of July 3, 1947, P. L. 1234, 12 P.S. §877 et seq.[3] The issue pre-

---

[2] The question presented is one of first impression in the Pennsylvania appellate courts. Inquiries indicate different practices are followed in the several counties of the Commonwealth when dealing with this problem.

[3] Note, however, that several sections of this act concerning the practice in reviving judgment and issuing executions thereon have been suspended and changed by the Pennsylvania Rules of Civil Procedure, effective April 1, 1965. Note also, Rule 3104 of

sented herein centers on the construction of §7(a) thereof, 12 P.S. §883(a), which is still extant and provides as follows: "(a) The holder of any judgment may, within five years after the entry thereof or after the entry of any judgment of revival thereon, have execution in the manner provided by law on such original judgment or on such judgment of revival, as the case may be, against any real property bound by the lien of the judgment, whether or not any interest therein has been acquired by a terre-tenant and against any real property acquired by the defendant subsequent to the entry of the original judgment or of the judgment of revival, as the case may be, and owned by him at the time of the indexing of the execution. In the case of after-acquired property, the execution, when docketed and indexed, shall become a lien upon such real property. In the case of real property which is then subject to the lien of the judgment, the execution, when docketed and indexed, shall continue such lien beyond the time it would otherwise have expired. Any lien obtained or continued solely as the result of the docketing and indexing of an execution shall continue only for a period of five years from the indexing of the execution."

The rule that judgment creditors' order of priority is determined by the date of their entering judgment is subject to the limitation that the senior judgment must not have lapsed or failed of revival within five years of the date it was entered: *First Nat. B. & T. Co. v. Miller*, 322 Pa. 473, 186 A. 87 (1936). Appellant admits that by virtue of the issuance, docketing and indexing of the execution process, the lien of appellee's judgment continued on during the life of the writ or

---

those same rules, which requires the prothonotary to index a writ of execution against the defendant in the judgment index "upon praecipe of the plaintiff" (effective November 1, 1960).

beyond the fifth anniversary date of its entry. But, she contends that when the writ was stayed, the lien then lapsed in the absence of other revival process. In other words, that the lien of the judgment and the execution are one and the same. Our study of §7(a) of the Act of 1947 compels a different conclusion.

Prior to the Act of 1947, the general rule was that the lien of execution was not distinct from the lien of the judgment. See, *Cake's Estate. Cake's Appeal,* 186 Pa. 412, 40 A. 568 (1898), and *Davis v. Ehrman,* 20 Pa. 256 (1853). However, the Act of 1947, supra, changed this rule and definitely drew a distinction between the lien of the judgment and the execution. Hence, even though the lien of the execution lapsed when the writ was stayed,[4] it is our conclusion that this did not affect the lien of the judgment.

That the statute involved intended such a distinction is evidenced by a study of the entire section involved. For instance, it provides, inter alia, that "in the case of after-acquired property, the execution, when docketed and indexed, *shall become a lien upon such real property.*" (Emphasis supplied.) At common law, a preexisting judgment was not a lien on after-acquired real estate: *Gen. Pulaski B. & L. Assn. v. P. Tr. Co.,* 338 Pa. 198, 12 A. 2d 336 (1940). But a lien could be created thereon by the issuance of a writ of execution and an accompanying levy. However, for the lien to attach, an actual seizure was mandatory: *Sherrard v. Johnston,* 193 Pa. 166, 44 A. 252 (1899), and *Ross & Co.'s and Elsbree's Appeal,* 106 Pa. 82 (1884). The Act of 1947 includes no such require- ment. The lien now attaches immediately upon the is- suance, docketing and indexing of the execution proc- ess. The execution and the lien are separate and dis-

---

[4] The judgment debtors did not complain or raise the issue of lapse in this case so it is not necessary for us to rule upon the effect on their rights by the procedure in question.

tinct, even though the lien begins from the date the prescribed statutory process is filed.

In this connection, it should also be noted that the statute speaks of a "lien obtained or continued" and then in the same sentence proceeds to speak of "an execution". That it intended to differentiate between the two seems unquestionable.

Therefore, we rule that in the case of real estate already subject to a lien of a judgment, the issuance, docketing and indexing of a writ of execution thereon operates as a revival thereof for a period of five years, regardless of the fact that the writ of execution is later stayed.

Order affirmed.

Mr. Justice ROBERTS concurs in the result.