**In the Matter of Lonnie L. CLIFTON and Janice Clifton, Debtors.**

**Lonnie L. CLIFTON and Janice Clifton, Plaintiffs,**

v.

**Mary & Joseph TAVARES, National Budgeting Co., Garden Budgeting Corp., Sam Zimmerman, and Bamberger's/Macy, Inc., Defendants.**

**Bankruptcy No. 82–01665.
Adv. No. 82–0754–TS.**

United States Bankruptcy Court,
D. New Jersey.

Oct. 6, 1983.

Welton C. Johnson, Red Bank, N.J. for debtors.

Sol Rosenberg, P.A. by Arthur J. Raimon, Clifton, N.J., for defendants, National Budgeting Co. and Garden Budgeting Corp.

## OPINION

AMEL STARK, Bankruptcy Judge:

The debtors, Lonnie L. Clifton and Janice Clifton, have filed a complaint under 11 U.S.C. § 522(f)(1) to avoid judicial liens placed on their family residence by five creditors from December 1975 to March 1978. Two of the defendants contend that section 522(f) effects an unconstitutional taking of property without just compensation. In view of the recent decision of the United States Court of Appeals for the Third Circuit in *Commonwealth National Bank v. United States (In re Ashe)*, 712 F.2d 864 (3d Cir.1983), I reject the defendants' argument and determine that the liens on the debtors' residence are void.

### Facts and Procedural History

1. The debtors have owned their home in New Jersey subject to a mortgage since June 1973.

2. Defendant National Budgeting Co. obtained a judgment against the debtors which was docketed in the Superior Court of New Jersey (No. DJ–10, 047–75) on December 15, 1975, in the amount of $374.40 plus costs of suit, $90.36, for a total of $464.76; interest on the judgment from 1975 until the date of debtors' petition was $217.09. Brief for Defendants at 1. National filed a proof of claim on July 27, 1983, however, stating that the debtors owed it a total of only $217.09 as of the filing of the petition.

3. Defendant Garden Budgeting Corp. obtained a judgment against the debtors which was docketed in the Superior Court of New Jersey (No. DJ–21, 729–75) on April 12, 1976, in the amount of $1,175.49 plus $73.98 for costs of suit; interest on the judgment as of the date of petition was $709.05. Brief for Defendants at 1.

4. The three remaining defendants obtained judgments in the Superior Court in January 1977 (Mary and Joseph Tavares, No. L–4302–76) and in Monmouth County District Court in February 1978 (Bamberger's/Macy, Inc.) and March 1978 (Sam Zimmerman). The complaint does not state whether the county court judgments were docketed in the Superior Court and none of these three defendants filed answers.

5. Debtors filed a Petition under Chapter 7 of the United States Bankruptcy Code in this court on March 17, 1982.

6. Debtors listed their home as their only piece of real property, stated the market value as $31,000 and the mortgage amount as $29,000, and claimed an exemption for the equity up to $15,000 under 11 U.S.C. § 522(d)(1).

7. The trustee abandoned the debtors' family residence under 11 U.S.C. § 554(a) on May 25, 1983, because the amount of lien or liens on the property was $28,614.09.

8. On May 12 and June 9, 1982, the debtors filed a complaint and an amended complaint to avoid the judicial liens of the five defendants; National Budgeting Co. and Garden Budgeting Corp. answered, alleging an unconstitutional taking of property.

9. On June 28, 1983, creditors were notified that the payment of a dividend may be possible, and August 22, 1983 was set as the last day for filing claims pursuant to Bankruptcy Rule 302(e)(4). Only three creditors filed claims: National Budgeting Co. ($217.09), Garden Budgeting Corp. ($1,958.52), and the state of New Jersey ($519.83). The record does not reveal whether the newly-discovered property will pay for all of these debts.

### Background

In New Jersey, a final judgment for a sum certain entered in the Superior Court of New Jersey, or a judgment of a County

District Court that has been docketed with the Superior Court, is a lien upon all real property owned by the judgment debtor that is located within this state. N.J.Stat. Ann. § 2A:16–1, –36 (West 1952 & Supp. 1983); *In re Blease,* 605 F.2d 97, 98 (3d Cir.1979); *In re Fornabai,* 227 F.Supp. 928, 930 (D.N.J.1964). For the lien to be created, it is only necessary that the judgment be entered upon the records of the Superior Court. It is not necessary that a levy and execution be made upon the real property owned by the judgment debtors. *In re Blease,* 605 F.2d at 98; *In re Fornabai,* 227 F.Supp. at 930.

At the time the defendants had their judgments docketed in the Superior Court, therefore, each held a judgment lien on the debtors' home which entitled them at least to the proceeds remaining after sale of the property and payment of the mortgage. At that time, under New Jersey law and pre-Code bankruptcy law, the creditors may have retained their liens on the property even after the debtors' bankruptcy because New Jersey did not provide a homestead exemption, *see* N.J.Stat.Ann. § 2A:17–1, :17–17, :26–4 (West Supp.1983), and judgment liens survived discharge in bankruptcy,[1] N.J.Stat.Ann. § 2A:16–49.1 (West Supp.1983); *Trend Mills v. Socher,* 4 B.R. 465, 468 (D.N.J.1980); *Furnival Machinery Co. v. King,* 142 N.J.Super. 251, 256, 361 A.2d 91 (App.Div.1976). With the Bankruptcy Code of 1978, however, Congress altered the legal effect of judicial liens.

A substantial purpose of the bankruptcy laws is to give a fresh start to persons burdened by overwhelming debt and to thereby return them to productivity. H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 125 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787; LoPucki, *A General Theory of the State Remedies/Bankruptcy System,* 1982 Wis.L.Rev. 311, 321–22 (1982). The primary

means by which the bankruptcy laws do so is to discharge the debtor from debts which cannot be paid from the sum of his property. He is not required to turn over all of his property to creditors, however; to give the debtor a meaningful fresh start he is allowed to keep certain items of property, and the first such exemption listed under the federal scheme is the equity in his home up to $7,500.[2] 11 U.S.C. § 522(d)(1). A person may in effect waive his right to such exemptions prior to petitioning for relief by giving creditors a security interest in otherwise-exempt property. And as suggested above, prior to the Bankruptcy Code of 1978, creditors could also overcome the debtor's right to exemptions by acquiring a judicial lien on otherwise-exempt property. But in enacting the Bankruptcy Code, Congress determined that the importance of granting a debtor a fresh start outweighed the creditor's rights under a judicial lien. Section 522(f)(1) states that

the debtor may avoid the fixing of a [judicial] lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have [otherwise] been entitled.

11 U.S.C. § 522(f)(1).

This section would deprive the creditors of any right to execute on the debtors' property or to obtain proceeds from its sale. They contend that Congress lacks power to deprive them of their liens without paying them just compensation.[3]

*Discussion*

The United States Supreme Court resolved the constitutional attack on a related subsection of section 522(f) by interpreting the statute to apply prospectively only. In *United States v. Security Industrial Bank,* —— U.S. ——, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982), creditors challenged section 522(f)(2) of the Bankruptcy Code, which

---

1. This lien may have been voidable under section 70c of the Bankruptcy Act, however, and may be voidable under its successor, 11 U.S.C. § 544(a)(1). *See infra* p. 789. Neither party has addressed this issue.

2. States may opt out of the federal exemption scheme, 11 U.S.C. § 522(b)(1), but New Jersey has not done so.

3. "[N]or shall private property be taken for public use, without just compensation." U.S. Const. amend. V.

allows a debtor in bankruptcy to void non-possessory, nonpurchase-money security interests in household goods and certain other personal items. The court did not decide that retroactive application would violate the Taking Clause of the Fifth Amendment, but found substantial doubt of its constitutionality and therefore attempted to construe the statute to avoid the constitutional issue. *Security Industrial Bank,* —— U.S. at ——, 103 S.Ct. at 412, 74 L.Ed.2d at 243. Following the rule of *Holt v. Henley,* 232 U.S. 637, 34 S.Ct. 459, 58 L.Ed. 767 (1914), the Court held that:

> No bankruptcy law shall be construed to eliminate property rights which existed before the law was enacted in the absence of an explicit command from Congress.
>
> *Security Industrial Bank,* —— U.S. at ——, 103 S.Ct. at 414, 74 L.Ed.2d at 245.

The legislative history of section 522(f) not only failed to show such an explicit command, but revealed that Congress had deleted such an explicit command from an earlier proposed version of the statute. *Id.* The Court therefore held that section 522(f)(2) could not be used to avoid security interests acquired by creditors prior to its enactment.

In *Commonwealth National Bank v. United States (In re Ashe),* 712 F.2d 864 (3d Cir.1983), the United States Court of Appeals for the Third Circuit concluded that *Security Industrial Bank* did not bar retroactive application of section 522(f)(1) to judicial liens because of critical distinctions between judicial liens and nonpossessory security interests. Retroactive application caused no Fifth Amendment violation because the change in the law wrought by the Bankruptcy Code "adds nothing of constitutional dimensions, with respect to the avoidance of judicial liens." *In re Ashe,* 712 F.2d at 868. This holding was not essential to the judgment that the judicial lien in *Ashe* could be avoided, because the lien had not been obtained until after the enactment of the Bankruptcy Code. 712 F.2d at 868; *id.* at 876 (Becker, J., dissenting). But the court made clear that it relied primarily on the following reasoning to void the liens.

Under the Bankruptcy Act of 1898, and until the effect date of the Bankruptcy Code of 1978, judicial liens could be avoided by the trustee if they were obtained (1) less than four months before the filing of a petition and (2) while the debtor was insolvent. *See* Bankruptcy Act § 67(a), 66 Stat. 420, 427 (1952). On November 6, 1978, the enactment date of the Bankruptcy Code, any judicial lien obtained prior to July 6, 1978 or while the debtor was solvent was therefore unassailable if the debtor had not yet filed a petition. The Bankruptcy Code, however, allowed debtors to avoid these liens to the full extent of their exemptions by simply filing after October 1, 1979. The Third Circuit concluded in *Ashe* that this change in the creditors' property rights was constitutionally insignificant and therefore found no taking of property. *In re Ashe,* 712 F.2d at 868.

The court acknowledged that in order to apply section 522(f)(1) retroactively it was necessary to overcome the rule of statutory construction announced in *Holt v. Henley, supra,* barring retroactive application absent a clear command from Congress. The court found that "[p]lainly *Holt v. Henley* does not speak at all to the appropriate treatment of judicial liens," 712 F.2d at 867, for two reasons. First: Prior to 1898, a creditor holding a debtor's warrant of attorney to confess judgment could enter judgment against the debtor and obtain a lien on his property at any time prior to a petition for bankruptcy. Section 67f of the 1898 Act changed the law, permitting trustees to void such liens if obtained within four months before the petition, and the Supreme Court permitted this change to apply retroactively to warrants of attorney obtained before 1898. *Wilson Bros. v. Nelson,* 183 U.S. 191, 22 S.Ct. 74, 46 L.Ed. 147 (1901). This decision voided warrants of attorney rather than judicial liens, but the *Ashe* court concluded that changes in law relating to judicial liens could apply retroactively even without a clear and unmistakable declaration of intent by Congress. *In re Ashe,* 712 F.2d at 866.

Second: The Supreme Court decided in 1913 that Congress could set aside judicial liens for the benefit of the debtor's exemptions. *Chicago, B. & Q.R. Co. v. Hall,* 229 U.S. 511, 33 S.Ct. 885, 57 L.Ed. 1306 (1913). This case did not involve retroactive effect. The *Ashe* court concluded that when *Holt v. Henley* announced its rule of construction for bankruptcy laws the following year, it did not apply to laws relating to judicial liens because "[t]heir status, as subject to the plenary power of Congress, had already been settled." *In re Ashe,* 712 F.2d at 867.

The reasoning of *Ashe* applies equally to all judicial liens. It is therefore of no consequence that, unlike in this case the judicial liens in *Ashe* were acquired by the creditors through confession of judgment and default judgment in Pennsylvania.

An additional reason, apart from the holding in *Ashe,* may justify applying section 522(f)(1) retroactively: the defendants' liens may have been voidable under section 70c of the Bankruptcy Act. Under New Jersey law, a junior judgment lien may gain priority over a senior judgment lien by executing first. None of the defendants have levied and the trustee is treated as having levied on the day of the petition, thus voiding the defendants' liens. *In re Blease,* 605 F.2d 97 (1979). The creditors therefore lost nothing as a result of the enactment of the Bankruptcy Code. This was not the situation in *Ashe* because Pennsylvania, like most states, fixes priority among judgment liens on the day the judgments are docketed. *Philadelphia National Bank v. Taylor,* 421 Pa. 35, 218 A.2d 246 (1966); 46 Am.Jur.2d *Judgments* § 322 at 517 (1969).

Because the trustee concluded that the property would yield no value to the estate after payment of the mortgage and the debtors' exemptions, I conclude that the judicial liens at issue would impair the debtors' right to a $15,000 exemption. Section 522(f)(1) therefore voids all liens challenged by the plaintiff-debtors.

An order should be submitted consistent with this opinion.