**In re ORTH–O–VISION, INC. and Queens Home Theatre, Inc., Debtors.**

**ORTH–O–VISION, INC. and Queens Home Theatre, Inc., Plaintiffs,**

**v.**

**WOMETCO HOME THEATRE, INC., Defendant.**

**Bankruptcy No. 883–30297–18.**
**Adv. No. 883–0122–18.**

United States Bankruptcy Court, E.D. New York.

June 10, 1985.

Louis P. Rosenberg, Brooklyn, N.Y., for debtors.

Nixon, Hargrave, Devans & Doyle, New York City, for Wometco Home Theatre.

## DECISION & ORDER

C. ALBERT PARENTE, Bankruptcy Judge.

On February 15, 1983, Orth-O-Vision, Inc. and Queens Home Theatre, Inc. (the "debtors"), filed for relief under Chapter 11 of the Bankruptcy Reform Act (the "Code"). By order of this court, their cases have been substantively consolidated. No trustee has been appointed and pursuant to 11 U.S.C. § 1107 the debtors, as debtors-in-possession, perform all the functions and duties of a trustee.

On February 28, 1983, the debtors commenced the captioned adversary proceeding in which they seek to avoid, pursuant to 11 U.S.C. § 547(b), two judgment liens obtained by the creditor, Wometco Home Theatre, Inc. ("Wometco"). One lien encumbers the debtors' real property; the other a bank account containing $6,358.00. Both liens were obtained less than 90 days before the debtors filed for Chapter 11 relief.

During the course of the adversary proceeding, the debtors and Wometco entered into a stipulation in which it was agreed that the debtors would liquidate their assets, and that Wometco's liens, if not avoided, would transfer to the proceeds of those assets securing the liens. They further stipulated that Wometco's claim would aggregate to $440,131.89.

The debtors' liquidation realized approximately $186,000. One Hundred Eighty-four Thousand ($184,000) Dollars of this amount is subject to Wometco's liens if they are not avoided.

In addition to Wometco's claim, the parties agree that there are priority claims of approximately $96,000 and unsecured claims of approximately $64,000.

## DISCUSSION

■ Section 547(b) authorizes a trustee to avoid certain "preferential" transfers of the debtor's property made within 90 days of the debtor's filing for relief. Involun-tary transfers of the debtor's property including judicial liens fall within this provision. *Barr v. National Aircraft Services, Inc. (In re Cosmopolitan Aviation Corp.),* 34 B.R. 592, 594 (Bankr. E.D.N.Y.1983).

In order to avoid a § 547 transfer, the trustee must prove that the transfer was: (1) to a creditor; (2) on account of the debtor's antecedent debt; (3) made while the debtor was insolvent; (4) within 90 days of the filing of the petition; and (5) which enabled the creditor to receive more than he would receive in a Chapter 7 case if no transfers had been made. The trustee is aided in his proof by a rebuttable presumption that the debtor was insolvent during the 90 day period immediately preceding the filing of the petition. § 547(f). If the trustee satisfies the above-enumerated elements and the transfer is not exempt under § 547(c), it is avoidable.

Wometco concedes that the acquisition of the judicial liens were transfers to a creditor on account of the debtors' antecedent debt, and that they were made within 90 days of the filing of the petition. Wometco does not refute the presumption of insolvency or attempt to bring itself within one of the § 547(c) exemptions. Rather, Wometco contends that the debtors have not proved, in accordance with § 547(b)(5), that the acquisition of the liens enabled Wometco to receive more than it would otherwise receive as a Chapter 7 distributee.

Wometco asserts that in determining a creditor's distributive share in the Chapter 7 proceeding described in § 547(b)(5), the court must construct a "hypothetical liquidation estate" based upon what a "prudent liquidation" would realize. Wometco has submitted evidence which it contends demonstrates that the debtors' liquidation was not "prudent" in that the debtors did not vigorously collect their receivables and abandoned assets of substantial worth.

Wometco estimates that a prudent liquidation would have generated $469,000, rather than the $184,000 the debtors received. Wometco, using the results of its "prudent liquidation concept," calculates that if its liens were avoided, its distribu-

tive share in a Chapter 7 proceeding would be $324,510.[1] Wometco concludes that since its Chapter 7 distributive share would be greater than the $184,000 securing its liens, the transfer of the liens was not preferential.

The court rejects Wometco's contention that a hypothetical prudent liquidation estate must be used as the basis for determining Wometco's projected share of a Chapter 7 distribution. For whether the court uses Wometco's estimate of a hypothetical prudent liquidation, or the results of the actual liquidation by the debtors, it becomes apparent that Wometco has received a preference.

■ Indeed, as a matter of law, whenever a general unsecured creditor obtains, within the preference period, a judicial lien against a debtor who cannot fully repay his unsecured creditors, he has received a preference. *Manufacturers & Traders Trust Company v. Goldman (In re Ollag Construction Company)*, 446 F.Supp. 586, 598 (W.D.N.Y.1978); *rev'd on other grounds*, 578 F.2d 904 (2d Cir.1978); *Deel Rent-A-Car, Inc. v. Levine*, 16 B.R. 873 (S.D. Fla.1982).

■ Wometco has improperly calculated the effect of the transfers. Pursuant to § 547(b)(5) the court is required to determine what a transfer "enables the creditor to receive." To make this determination, it is necessary to consider, not merely as Wometco has, the value of the transfer, but also the amount, if any, the creditor will recover upon distribution.

> The preferential nature of the transfer should be tested ... by taking the transfer in conjunction with the dividend, if any, which the preferred creditor would receive out of the bankrupt estate.

3 Collier, Part 2, ¶ 60.34, ft.note 8, citing legislative history to the preference provisions of the Bankruptcy Act; *accord, G.E. Grogan v. Southwest Textiles, Inc. (In re*

*Advance Glove Manufacturing Co.)*, 42 B.R. 489, 491 (Bankr.E.D.Mich.1984).

■ Applying Wometco's hypothetical estate and rounding off for convenience Wometco's stipulated claim, the proper calculation of the effect of Wometco's transfers is as follows: Pursuant to § 506, if Wometco's liens are unavoided, Wometco's claim of $440,000 will be secured for $184,-000, and unsecured for $256,000. Including Wometco's unsecured claim, the debtors' total unsecured liability will be $320,-000 ($256,000 + $64,000). Wometco will therefore be entitled to 80% of the assets available for distribution to unsecured creditors. Adopting Wometco's hypothetical liquidation value of $469,000, after deducting the $184,000 securing Wometco's liens and the $96,000 owed priority claimants, $189,000 will remain for distribution to unsecured claimants. Wometco's *pro rata* share of these funds would be $151,200 (80% of $189,000). Thus, if its liens remain unavoided, the transfers will enable Wometco to receive $184,000 as a secured claimant and $151,200 as an unsecured claimant, or a total of $335,200, an amount in excess of the $324,500 Wometco would receive if its liens are avoided.

It is clear, therefore, that the acquisition of the judicial liens enabled Wometco to receive more than it would in a Chapter 7 distribution with its liens avoided.

Accordingly, the court finds that the debtors have sustained their burden and demonstrated that Wometco's judgment liens were preferential transfers. The liens are therefore avoided.

It is SO ORDERED.

---

**1.** Wometco's projection is based upon the following calculation: If the liens are avoided, Wometco's . claim is fully unsecured and will represent 87% of the debtor's total unsecured liability ($440,000/$504,000). If the liquidation had realized $469,000 after payment of the $96,-000 in priority claims, $373,000 would remain for distribution to unsecured creditors. 87% of $373,000 = $324,510.