In re Robert E. KING and Patricia A. King, Debtors.

FACILITY PLANNING, INC., a Minnesota corporation, Plaintiff,

v.

Robert E. KING and Patricia A. King, Defendants.

Bankruptcy No. 3–86–861. Adv. No. 86–150.

United States Bankruptcy Court, D. Minnesota, Third Division.

Dec. 1, 1986.

Michael Schwartz, Minneapolis, Minn., for plaintiff.

Michael Pinotti, Roseville, Minn. and Richard Nadler, St. Paul, Minn., for defendants.

## MEMORANDUM ORDER FOR SUMMARY JUDGMENT

DENNIS D. O'BRIEN, Bankruptcy Judge.

Motions for summary judgment brought by Plaintiff and for dismissal brought by Defendants were heard on October 8, 1986, in this adversary proceeding wherein Plaintiff seeks judgment against Defendants of nondischargeability of its debt pursuant to 11 U.S.C. § 523(a)(2)(A). Appearances were as noted in the record. Based upon arguments of counsel, depositions, affidavits and briefs filed in connection with the matter, and upon the entire record, the Court now being fully advised hereby makes this Order pursuant to the Federal and Local Rules of Bankruptcy Procedure.

### I.

On and about February 15, 1984, Defendant Robert E. King obtained $30,000.00 from Plaintiff Facility Planning, Inc., by use of false pretenses, false representation, actual fraud and deceit. Apparently, Defendant was in urgent need of funds for some clandestine purpose he has never revealed.[1] He has admitted, however, that the money was not used for the purposes stated to Plaintiff in connection with his obtaining funds.[2] From the record, it is clear that Mr. King never intended to use the funds for the represented purpose and that he did intend to deceive Plaintiff regarding the matter.

Plaintiff's principal, unaware of the fraud and apparently seeking to capitalize on what seemed to be a good prospect, agreed to make a loan of $30,000.00 for 45

---

1. Attempts in depositions by the Plaintiffs to elicit information from King regarding actual use of the $30,000.00 produced responses invoking the Fifth Amendment protection against self-incrimination.

2. King represented to Plaintiff that he needed short-term money to purchase a building for investment and to house his insurance agency. The money was to be paid back from long-term financing that he would obtain elsewhere.

days at $6,000.00 interest (annual rate of 162 percent).[3] Plaintiff's attorney handled the transaction. Having in mind Minnesota's usury laws, he informed Defendant Robert King at a meeting held in his office on the same day Plaintiff agreed to make the loan, that it could not be made unless King incorporated. Willing to do nearly anything to get the money (and to get it quickly), King, at Plaintiff's lawyer's suggestion, went down the hall to the firm's corporate law department and incorporated. Approximately three days later, upon the effective date of incorporation, the $30,000.00 loan was consummated.

As part of the transaction, on February 15, 1984, Defendant Robert King executed a note on behalf of Robert E. King and Associates, Inc., as its president for $36,000.00 payable to Plaintiff in 45 days. On the same day, both he and Defendant Patricia King executed personal guarantees and a mortgage on their homestead to secure payment.[4] The corporation was never funded, never had any assets (except perhaps briefly upon issue of Plaintiff's $30,000.00 check), never became operative, and Plaintiff sought no security from it in connection with the transaction.

The loan was not paid when it came due. After several handwritten memos and "insufficient funds" checks issued to Plaintiff by Robert King, Plaintiff's attorney sent King a letter dated June 29, 1984, stating in part:

As you will recall, we were instrumental in drafting the Promissory Note, Guarantee and Mortgage in February, 1984, when *you* borrowed the sum of $30,000.00 from Facility Planning Inc. of Minnesota. At that time, we also assisted you in incorporating your business. [emphasis added]

By December 31, 1984, Defendants had paid Plaintiff $13,150.00 on the note. On that date, they executed a confession of judgment in connection with a state court collection proceeding brought by Plaintiff wherein they agreed to an amount owing by them individually to Plaintiff in the amount of $29,619.41. That figure was broken down as follows:

| | |
|---|---|
| Principal | $22,850.00 |
| Accrued Interest | 4,774.41 |
| Attorney's Fees | 1,995.00 |
| **TOTAL** | **$29,619.41** |

They further agreed that upon default in a schedule of payments provided for in the document, judgment could be entered against them. No payments have been made, but the record does not disclose whether judgment was ever entered. Debtors filed their petition for relief under 11 U.S.C. Chapter 7 on March 28, 1986.

Plaintiff seeks judgment of nondischargeability of its debt in the amount of $29,619.41, plus interest and attorney's fees from December 31, 1984, the date of the confession of judgment, pursuant to 11 U.S.C. § 523(a)(2)(A). Defendants deny fraud, deny reliance, and assert the defense of usury.

---

3. After March 31, 1984, its date of maturity, the note evidencing the debt carried an annual rate of 20 percent.

4. The Kings were not the record owners of their homestead at the time. One Irene Morgenthaler had received conveyance by warranty deed from the Kings dated May 1, 1983, and recorded May 17, 1983. She, in turn, had conveyed title to her son, John, who King testified was blackmailing him regarding the reason why King needed the money obtained from Plaintiff. John's deed was dated September 2, 1983, but was not recorded until February 17, 1984. Plaintiff recorded its mortgage on March 6, 1984. Had it been recorded contemporaneously with its issue, the mortgage would have been effective. John conveyed the property back to the Kings by warranty deed dated and filed February 21, 1984, and the mortgage would have attached had it been of record at that time. It did not attach on February 21, 1984, however, because on that same date, the Kings conveyed title back to John by warranty deed which was also immediately recorded. Of course, had Plaintiff examined the title prior to making the loan, it probably would not have been made. Defendant Robert King testified that he considered the latest warranty deed to Morgenthaler as an equitable mortgage, but that he did not disclose the "Morgenthaler connection" with the homestead because he thought the disclosure would have a chilling effect on the loan transaction.

## II.

Defendant Robert King obtained $30,000.00 from Plaintiff by civil fraud, false pretense and deceit.[5] King's fraud was both in misrepresenting his intended use of the funds and in actively concealing a material fact regarding the status of title to the collateral he offered as security for repayment.[6]

 Civil fraud and actionable civil fraud are not the same. Actionable civil fraud requires a nexus between the act or omission and the alleged loss to the defrauded party. That nexus is reliance. Civil fraud without reliance is merely descriptive of conduct, is "fraud in the air", and is not actionable. Nondischargeability based on fraud under 11 U.S.C. § 523(a)(2)(A) involves actionable civil fraud, not "fraud in the air."

 The first question that deserves analysis in this case is whether Plaintiff relied on King's fraudulent representations and deceit.[7] King and Plaintiff's principal who participated in the transaction were at best casual business acquaintances. Apparently, King had placed insurance for Plaintiff through his agency. Yet, on the same day that King sought the money, this individual caused a meeting with Plaintiff's attorney that resulted in King's incorporation by Plaintiff's law firm, execution of loan documents, closing and disbursement of funds within three days after the meeting. There is no evidence that Plaintiff sought any information regarding King's stated purpose for the loan, or even requested an address for the building supposedly to be purchased with its proceeds. No attempt was made to control disbursement of the funds or how they were to be subsequently used by the borrower.

From the state of the record, the Court is drawn to the conclusion that Plaintiff did not care what King's intended use of the money was, whether it be to purchase a building or otherwise.[8] It appears that Plaintiff was motivated solely by the prospect of obtaining an exorbitant return on its money, secured by what it thought to be a valid mortgage on King's homestead. Certainly, reliance on stated purpose for the loan has not been shown by clear and convincing evidence.

 Reliance on King's deceitful silence regarding state of the title to his homestead has not been shown by clear and convincing evidence either.[9] The state of King's title was public record at the time of the transaction. Plaintiff was represented by a lawyer who, from the existing state of the record, apparently assumed the responsibility for searching the title. He did not search the title. Plaintiff's reliance, if any, was on his lawyer, not on King's silence. Furthermore, the mortgage deed securing Plaintiff's loan recites a covenant of title "except mortgages of record as of the date hereof". From the record, it appears that the "Morgenthaler connection" with this property was, at best, an equitable mortgage.[10] The property is presently the sub-

---

**5.** It has not been shown that Defendant Patricia A. King knowingly participated in any fraud. While it is true that she repeatedly invoked the Fifth Amendment in her deposition of September 17, 1986, regarding certain areas of inquiry, her testimony taken as a whole (especially by November 17, 1984 deposition) reveals that she had no knowledge of the facts and circumstances of the fraud. She is a housewife and mother who trusted King regarding financial matters and essentially did what she was asked to do without question.

**6.** See Footnote No. 4.

**7.** No distinction is made between the term "reliance" and the terms "reasonable reliance" "justifiable reliance" and "right to rely". It is this Court's view that the latter terms are redundancies. Claimed reliance that is without right, that is unreasonable, or that is unjustified, is in reality not reliance at all, since those elements are inherent to the concept of reliance itself.

**8.** Plaintiff offered no testimony or affidavit regarding the matter.

**9.** Although Plaintiff's principal filed an affidavit of general reliance on what he termed "Defendants' representation that the loan by Plaintiff was adequately protected", the Court does not consider the affidavit clear and convincing evidence on the issue.

**10.** See Footnote No. 4.

ject of quiet title action in state district court.

■ Based on the foregoing, summary judgment of nondischargeability under 11 U.S.C. § 523(a)(2)(A) would be inappropriate. However, this does not end the matter. Lady Justice may be blind, but She is not insensitive. The acts of Defendant Robert E. King in connection with the transaction at issue here, clearly and unequivocally constituted larceny.[11] Larceny involves criminal fraud. It is theft. Reliance, on the part of a victim, is not an element of larceny. A debt created through larceny is nondischargeable under 11 U.S.C. § 523(a)(4).

Form should not prevail over substance when justice demands otherwise. Although the complaint and motion seek judgment under § 523(a)(2)(A), judgment should be granted under § 523(a)(4). To prolong resolution of this case through further pleading and protracted litigation would, in effect, be to stand Lady Justice on Her head.

### III.

■ The remaining question concerns the amount of nondischargeable debt. Plaintiff seeks judgment of nondischargeability in the amount of $29,619.41, with interest and attorney's fees from December 31, 1984, based on the loan transaction and confession of judgment. Defendants claim that the loan was usurious in violation of MINN.STAT. § 334.01. The Court agrees with Defendants, the loan was usurious.

MINN.STAT. § 334.01 provides in pertinent part:

The interest for any legal indebtedness shall be at the rate of $6 upon $100 for a year, unless a different rate is contracted

for in writing. No person shall directly or indirectly take or receive in money, goods, or things in action, or in any other way, any greater sum, or any greater value, for the loan or forbearance of money, goods, or things in action, than $8 on $100 for one year.

While the statute does not apply to loans made to corporations, and while individual guarantors of corporate loans are not ordinarily entitled to assert usury as a defense to enforcement of their guarantees, there are exceptions. The Minnesota Supreme Court has consistently held that it is not bound by form over substance when considering usury. Where the facts and circumstances of a particular case reveal that a transaction was structured to avoid the State's usury laws, form will be ignored and usury will be found. The facts and circumstances of this case justify ignoring the form of the transaction, and compel a finding of usury.

Robert E. King and Associates, Inc., was formed at the suggestion of Plaintiff's attorney, by its law firm, and for the sole purpose of accomplishing indirectly what could not be done directly because of the usury statutes. What was done here was paperwork by Plaintiff's agent, solely for the purpose of facilitating the charge of an exorbitant rate of interest that, absent the paperwork, clearly could not be legally charged. There was no other purpose for incorporation of Robert E. King and Associates, Inc., and the incorporation was accomplished by Plaintiff for Plaintiff's benefit only.

The loan was illegitimate at its inception and was not later legitimized by the confession of judgment.[12] The sensitivity of justice is not so callous, even against a wrong-

---

**11.** After the hearing, Plaintiff's attorney furnished the Court documentation showing that Robert E. King on October 28, 1986, filed a petition with the Hennepin County District Court in a pending criminal proceeding against him wherein he seeks to enter a plea of guilty to a felony charge of theft by swindle involving a transaction with Plaintiff. It is not apparent from the state court documents furnished whether the plea relates to the transaction at issue here, and this Court disregards the doc-

uments as bearing on any issue presently before it.

**12.** Usury laws are intended in substantial part to protect individuals, who are in desperate need of money, from overreaching lenders. The rate charged on this loan, especially for its first 45 days (annual rate of 162 percent), shocks the conscience.

doer, that it would allow for enforceability of a confession of judgment which provides for collection of the fruits of usury. This Court is remedial, not punitive.

 The loan was for $30,000.00. Defendants have repaid $13,150.00. The balance of $16,850.00 should be a nondischargeable debt of Robert E. King.[13]

ACCORDINGLY, BASED ON THE FOREGOING, IT IS HEREBY ORDERED:

1. The debt of Defendant/Debtor Patricia A. King to Facility Planning, Inc., is not nondischargeable, but will be or has been discharged pursuant to her general discharge. Although her motion is to dismiss, she is entitled to summary judgment.

2. The debt of Defendant/Debtor Robert E. King to Facility Planning, Inc., is nondischargeable in the amount of $16,850.00 with interest to accrue thereon from the date of entry of the judgment pursuant to this Order at the rate of interest applicable to judgments in and of the Courts for the State of Minnesota. Plaintiff is entitled to summary judgment.

3. Defendants' motion for dismissal is denied.

4. Plaintiff is entitled to its costs and disbursements herein as provided by law.

Let Judgment Be Entered Accordingly.

---

**13.** Defendant King argues that Plaintiff's entire claim is forfeited under MINN.STAT. § 334.03 which provides that a usurious obligation shall be void. The argument is hardly credible coming from one who obtained the money through larceny. The law does not compel such a result; nor could principles of equity withstand it. *See Rathbun v. W.T. Grant Co.,* 300 Minn. 223, 219 N.W.2d 641 (Minn.1974) and *Katz & Lange, Ltd. v. Beugen,* 356 N.W.2d 733 (Minn.App.1984). Forfeiture of interest and attorney's fees incurred to date is a sufficient remedy.