In re Kevin F. and Sue E. HIGGINS, Debtors.

Kevin F. and Sue E. Higgins, Plaintiffs,

v.

Eugene W. Erickson, Defendant.

Bankruptcy No. 00 B 14390(ASH).

Adversary No. 00–3004A.

United States Bankruptcy Court, S.D. New York.

Oct. 30, 2001.

exemption under 11 U.S.C. § 522. The Higginses also claim that one of their notes payable to Erickson is usurious and void under New York State law. Another issue presented is whether Erickson can belatedly challenge the dischargeability of his claim under 11 U.S.C. § 523(a). For the reasons set forth below, I conclude as follows: (1) the Higginses do not have standing to avoid pre-petition transfers as preferences under Section 547(b); (2) the lien of the Confession of Judgement is avoidable under Section 522(f)(1)(A) because it impairs the debtors' homestead exemptions; (3) the defense of usury has been waived; and (4) Erickson's right to contest the dischargeability of his claim under Section 523(a) is time-barred.

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2).

### *Background*

There are no genuine issues of material fact requiring a trial. The following is a summary of the important facts.

The Higginses borrowed $150,000 from Erickson on February 4, 1998, evidenced by a promissory note ("Note 1") due on February 4, 2000, with an interest rate of 18% per annum secured by a mortgage (the "Mortgage") on their home. Six months later, on August 10, 1998, the Higginses borrowed an additional $50,000 from Erickson and signed another promissory note ("Note 2") with an interest rate of 8% per annum.

In May 1999, the Higginses defaulted on both Notes. On December 30, 1999, the Higginses signed a confession of judgment (the "Confession of Judgment" or "Judgment") in favor of Erickson in the amount

Barr & Rosenbaum, LLP, by Elizabeth A. Haas, Spring Valley, NY, for Plaintiffs–Debtors.

Law Offices of Jeffrey L. Sapir, by Jeffrey L. Sapir, White Plains, NY, for Defendant–Creditor.

### *DECISION ON SUMMARY JUDGMENT MOTION*

ADLAI S. HARDIN, Jr., Bankruptcy Judge.

At issue before me is whether the liens of the mortgage and confession of judgment that secure defendant-creditor Eugene Erickson's claims against plaintiffs-debtors Kevin and Sue Higgins are subject to avoidance. Specifically, the Higginses assert that the mortgage and judgment liens constitute preferences under 11 U.S.C. § 547 and impair their homestead

of $181,263.33, being the aggregate amount then owed on both Notes.[1]

At the Higginses' request, Erickson refrained from recording the Mortgage and Confession of Judgment until June 30, 2000 and July 10, 2000, respectively.

Unbeknownst to Erickson, however, in August 1998 the Higginses borrowed $360,000 from Northeastern Mortgage Investment Corp. ("Northeastern") secured by a mortgage on their home, which the mortgagee recorded in October 1998, long before the Higginses defaulted on Erickson's loans. Thus, the Northeastern mortgage, although second in time, was recorded first and effectively wiped out any equity which would otherwise have secured Erickson's Notes under his Mortgage and Judgment. The Northeastern mortgage is now held by Household Financial Services ("HFS").

The Higginses filed their voluntary "no asset" Chapter 7 petition on September 20, 2000. Their home was appraised on August 29, 2000 at a value of $395,000. HFS' secured claim is scheduled at $375,617.25.[2] The Higginses' claimed homestead exemptions total $20,000.

### Discussion

### I. Avoidance of Preferences

The Higginses' claim to avoid the liens of the Mortgage and Confession of Judgment as preferences under 11 U.S.C. § 547(b) requires analysis of two quite separate issues. The first is whether the recording of the Mortgage and Confession of Judgment within ninety days of the Higginses' September 20, 2000 bankruptcy filing date constituted preferences under the terms of the statute.

Section 547(b) states in pertinent part:

(b) Except . . ., the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) . . .; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

---

1. On its face, this document lists two different judgment amounts, $181,448.33 and $186,263.33. The Higginses' petition lists the lower amount. Erickson asserts that the judgment amount should have been $186,775.99 based on his records of the payments made and interest accrued on both Notes. Since the exact amount does not affect the outcome of the issues before this Court, I shall assume (without deciding) that the amount listed on the petition is the value of the Judgment.

2. The parties dispute the exact amount of the mortgage held by HFS. The Higginses claim the amount of $375,617.25 that was due as of the petition date is the value of the HFS mortgage. Erickson maintains that the amount of $372,105.96 listed on the June 14, 2001 HFS account statement is the value of the mortgage. Since the exact amount of the HFS mortgage does not affect the outcome of the issues before this Court, I shall assume (without deciding) that $375,617.25, the number listed on the petition, is the value of the HFS mortgage.

■ There is no dispute that the requirements of the first four subsections are met on the facts in this case. The issue arises with respect to subsection (5). The question focuses on the premise that the objective of avoidance under Section 547(b) is to bring the property transferred pre-petition back into the estate so that all unsecured creditors of the debtor receive equal, pro rata distribution of that property. The argument seems to be that subsection (5) should be construed narrowly to apply only if the avoidance of the pre-petition transfer would bring property back into the estate for distribution to creditors. Here, avoidance of the transfers would not benefit the estate because all of the equity in the Higginses' home was consumed by the HFS mortgage and the debtors' combined homestead exemptions. Accordingly, it is argued, the policy objective of Section 547(b) would not be served by a holding that the pre-petition recording of the Mortgage and Confession of Judgment constituted avoidable preferences. *See Nielsen v. United States (In re Nielsen)*, 143 B.R. 93, 99 (Bankr.N.D.Tex. 1992); *Karnes v. Rakers Elevator, Inc. (In re Woker)*, 120 B.R. 454, 460 (Bankr. S.D.Ill.1990).

■ I reject this argument because it turns not upon a fair interpretation of the statutory language employed in subsection (b), but upon the fact that in this particular case other unsecured creditors are unaffected by the pre-petition transfers of security interests to Erickson because there is no available equity in the Higginses' home for unsecured creditors with or without the pre-petition transfers. Statutory provisions should be construed in accordance with the language employed by Congress in the statute itself, not by reference to the facts presented in a particular case. The fallacy of such fact-based, result-oriented statutory analysis is evident when one considers what the outcome would/ought to be in an hypothetical case where there was substantial equity in the Higginses' home which was eliminated by the pre-petition transfers to Erickson of security interests by the recording of the Mortgage and the Judgment. In such an hypothetical case, the provisions of subsection (5) clearly would apply. The transfers would enable Erickson "to receive more than" he would have received if the transfers had not been made and he had "received payment of such debt to the extent provided by the provisions of this title," *i.e.*, his pro rata portion of the equity in the Higginses' home, as opposed to having received a security interest in the entire hypothetical equity by reason of the pre-petition transfer liens. But the same analysis applies equally, although somewhat differently, in the actual facts of the case: the pre-petition transfers enabled Erickson "to receive more" than Erickson would have received if the transfers had not been made, because by the transfers he received two separate security interests in the debtors' home (which may have real value in the future), whereas if the transfers had not been made he would have received nothing in this no asset Chapter 7 case. It is true that in the hypothetical case other unsecured creditors would benefit from the avoidance of the pre-petition transfers, whereas on the actual facts unsecured creditors do not stand to benefit. But nothing in Section 547(b) makes the right of avoidance dependent upon the benefit *vel non* to other unsecured creditors, even though the statute was undoubtedly intended to benefit unsecured creditors. *See Orth–O–Vision, Inc. v. Wometco Home Theatre, Inc. (In re Orth–O–Vision, Inc.)*, 49 B.R. 943, 945 (Bankr.E.D.N.Y.1985); *Deel Rent–A–Car, Inc. v. Levine*, 16 B.R. 873 (S.D.Fla.1982), *aff'd*, 721 F.2d 750, 754–55 (11th Cir.1983).

The second issue is whether the Higginses, as Chapter 7 debtors, have standing to assert a preference claim. This issue also must be resolved by reference to the relevant provisions of the Bankruptcy Code, which make it quite clear that the Higginses do not have standing to assert a preference claim.

Section 547(b) states that "the *trustee* may avoid any transfer ..." (emphasis supplied). Section 1107 of the Code states that "a debtor in possession shall have all the rights ... and powers, and shall perform all the functions and duties ... of a trustee serving in a case under this chapter," but there is no analogous provision applicable in Chapter 7. Accordingly, absent a specific statutory authorization in the Bankruptcy Code, a Chapter 7 debtor does not have the power to exercise the avoidance power in section 547(b). This is consistent with the theory and purpose of preference avoidance, which is designed not to benefit a debtor but to protect the rights of general unsecured creditors. The statute makes it the trustee's responsibility to see that all property that may have been transferred to creditors during the preference period is recovered by the estate, to be divided equally among all unsecured creditors. The avoidance power is granted to the trustee so that the avoidance of transfers benefits the estate, and ultimately the remaining creditors, to the end that all creditors may recover on an equal, pro rata basis. 5 *COLLIER ON BANKRUPTCY*, ¶ 547.11[2] at 547–95 (Lawrence P. King ed. 15th Edition Rev. 1996) ("A debtor who is not a debtor in possession cannot maintain an action to set aside his or her own transfer as preferential under section 547."); *Northeast Alliance Federal Credit Union v. Garcia (In re Garcia )*, 260 B.R. 622, 635–36 (Bankr. D.Conn.2001); *In re White*, 258 B.R. 129, 131 (Bankr.D.N.J.2001) ("Bankruptcy Code section 547(b), however, does not confer standing upon a debtor to avoid such transfers. Instead, section 547(b) grants the avoidance power solely to the bankruptcy trustee.")

The Bankruptcy Code provides only one statutory basis for a Chapter 7 debtor to exercise the avoidance power of Section 547(b), namely, Section 522, which is designed to give limited protection to a debtor's exemptions. *See, generally, Price v. Manufacturers and Traders Trust Co. (In re Price)*, 260 B.R. 653, 654–55 (Bankr. W.D.N.Y.2001), *In re White*, 258 B.R. at 131–34 and *Humphrey v. Herridge (In re Humphrey)*, 165 B.R. 578, 579–80 (Bankr. D.Md.1993). The relevant provisions of Section 522 are subsections (h), (g), (b) and (f)(2), in that order. Subsection (h) provides as follows, in relevant part:

(h) The debtor may avoid a transfer of property of the debtor ... to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—

(1) such transfer is avoidable by the trustee under section ... 547 ...; and

(2) the trustee does not attempt to avoid such transfer.

The requirements of both subsections (1) and (2) of subsection (h) are met in this case. The question then is whether the conditions of subsection (g)(1) have been met. The condition set forth in subsection (g)(1)(A) is that "such transfer was *not a voluntary transfer* of such property by the debtor ..." (emphasis supplied). This condition cannot be met in this case, because both the Mortgage and the Confession of Judgment constituted voluntary transfers. Accordingly, the Higginses as Chapter 7 debtors do not have standing and have no power to assert a preference

claim under the express provisions of Sections 547(b), 522(h) and 522(g)(1)(A).

## II. *Avoidance to Protect the Homestead Exemption*

The Higginses seek to avoid the lien of the Confession of Judgment under 11 U.S.C. § 522(f)(1)(A). The statute provides, in relevant part, as follows:

(f)(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(A) a judicial lien . . . .

The law is clear that a confession of judgment is a judgment which when duly recorded, creates a judicial lien. *See Gardner v. Commonwealth of Pennsylvania, Dept. of Public Welfare (Appeal of Commonwealth of Pennsylvania, Dept. of Public Welfare)*, 685 F.2d 106 (3d Cir.1982), *cert. denied*, 459 U.S. 1092, 103 S.Ct. 580, 74 L.Ed.2d 939 (1982); *Commonwealth National Bank v. United States (In re Ashe)*, 712 F.2d 864, 868 (3d Cir.1983), *cert. denied*, 465 U.S. 1024, 104 S.Ct. 1279, 79 L.Ed.2d 683 (1984); *In re Matrone*, 183 B.R. 41, 42 (Bankr.N.D.N.Y.1995). The Bankruptcy Code defines a judicial lien as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding" 11 U.S.C. § 101(36). A lien obtained by the recording of a confession of judgment is unquestionably a lien obtained "by judgment" and by "legal ... process." Section 3218 of the New York Civil Practice Law and Rules sets forth the procedure in New York for filing and recording a confession of judgment resulting in the Clerk of the Court entering "judgment in the Supreme Court for the sum confessed." N.Y. CPLR § 3218(b)

(McKinney Supp.2000). A judgment by confession has all the "qualities, incidents and attributes of a judgment on a verdict" and so it becomes a judicial lien that is docketed and enforced in the same manner and with the same effect as a judgment in an action in the Supreme Court. *Giryluk v. Giryluk*, 30 A.D.2d 22, 289 N.Y.S.2d 458, 459 (1st Dep't 1968), aff'd, 23 N.Y.2d 894, 245 N.E.2d 818, 298 N.Y.S.2d 91 (1969). It appears that "every court that has addressed this issue has found that a confession of judgment is a judicial lien subject to avoidance under § 522(f)." *In re Matrone*, 183 B.R. at 42, citing *In re Gardner, supra* and *In re Ashe, supra; Clifton v. Tavares (Matter of Clifton)*, 35 B.R. 785, 789 (Bankr.D.N.J.1983); *Branton v. General Electric Auto Lease, Inc. (In re Branton)*, 24 B.R. 44, 46 (Bankr.D.Vt.1982).

Erickson argues that the confession of judgment created a voluntary or consensual lien and, therefore, that avoidance should not be permitted under Section 522(f)(1)(A). It is true that a confession of judgment is voluntary and consensual. But unlike Section 522(g)(1)(A), where the test is whether the transfer was voluntary, nothing in Section 522(f)(1)(A) discriminates between a judicial lien that is voluntary and one that is not voluntary. On its face, this Section applies to any judicial lien, whether voluntary or not, and it is not for the Court to exclude consensual or voluntary judicial liens from Section 522(f)(1)(A) when Congress did not do so.

Once it is established that the Confession of Judgment is a judicial lien, it must be determined whether it is avoidable because it impairs the Higginses' homestead exemption. Courts divided prior to 1994 over how a judicial lien impairs an exemption. *See In re Freeman*, 259 B.R. 104, 107–08 (Bankr.D.S.C.2001). In response,

Congress amended the Bankruptcy Code to include a simple arithmetic test to utilize in calculating when a lien impairs an exemption under Section 522(f)(1). *Id.* The amendment is contained in 11 U.S.C. § 522(f)(2)(A) and provides that:

(2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—

(i) the lien,

(ii) all other liens on the property; and

(iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

*See* the formula articulated in *East Cambridge Savings Bank v. Silveira (In re Silveira)*, 141 F.3d 34, 38 (1st Cir.1998); *In re Plott*, 220 B.R. 596, 597 (Bankr. N.D.Ohio 1998); *In re Whitehead*, 226 B.R. 539, 540–41 (Bankr.W.D.N.Y.1998); *Jones v. Mellon Bank (In re Jones)*, 183 B.R. 93, 95 (Bankr.W.D.Pa.1995).

In the case at bar,

(i) the lien sought to be avoided is $181,000

(ii) the other liens on the property are

$375,000—the first mortgage held by HFS

$141,000—the second mortgage held by Erickson

(iii) homestead exemption of **$20,000**.[3]

The sum of the above figures is $717,000. The value of the property is $395,000, and thus the sum of the liens and exemptions exceeds the value of the property by $322,000, meaning that the exemption is impaired by $322,000. Following the above-stated rule, since the impair-

ment exceeds the value of the judicial lien of $181,448 the entire judicial lien is avoided.

The parties' dispute centers around the value of the first mortgage, which both have argued, determines to what extent the lien is avoided. The Higginses contend that the HFS mortgage is $375,617.25 and that when inserted into the formula, results in a total of the liens and exemption that exceed the value of the property. Erickson maintains that the HFS mortgage is $372,105.96 based upon the June 2001 mortgage statement, and when calculated in the formula results in only partial impairment of the exemption by the Confession of Judgment and so the lien can only be partially avoided. Both parties however, have neglected to include the Erickson Mortgage as a second mortgage on the property that must be calculated under subsection 522(f)(2)(A)(ii), as part of "all other liens." When the Erickson Mortgage is added the formula results in a substantial impairment of the Higginses' exemption, and therefore the judicial lien must be entirely avoided.

### III. *Usury*

#### A. *Waiver of usury defense*

■ The Higginses next argue that Note 1 is usurious because it bears an interest rate of 18% per annum, exceeding the legal rate in New York State of 16%. As such, the Higginses seek to avoid payment of the note and its securing Mortgage and Confession of Judgment. Erickson responds that the Higginses waived their usury defense when they gave him a Confession of Judgment, and that the doctrine of res judicata bars review of the Confession of Judgment.

---

**3.** All numbers are rounded to the nearest thousand.

■ Note 1 bears an interest rate above that permitted by New York General Obligations Law § 5–501. General Obligations Law § 5–511 provides that a usurious note and all of its securing documents "shall be void." However, in New York State courts "[i]t has been established that usury is a personal defense which may be waived by the borrower." *Reyes v. Carver Federal Savings and Loan Ass'n,* 74 Misc.2d 323, 326, 344 N.Y.S.2d 501 (N.Y.Sup.1973) (*citing Howard v. Kirkpatrick,* 263 A.D. 776, 31 N.Y.S.2d 182 [3d Dep't 1941]). In *Barrett v. Conley,* 35 Misc.2d 47, 48, 228 N.Y.S.2d 992 (N.Y.Sup.1962), the defendant failed to appear at a proceeding that finalized the rights of the parties concerning an allegedly usurious mortgage. In holding that the defendant's failure to appear constituted a waiver of the defense that the mortgage was usurious, the court observed that "there seems to be no dispute as to the right of a borrower to waive the defense of usury or be estopped from asserting it." *See Schreiner v. Feichtmayr,* 234 N.Y.S.2d 631 (N.Y.Sup.1962) (default for failure to plead defense of usury constitutes a waiver of the defense); *In re Bocker,* 123 B.R. 164 (E.D.N.Y.1991) (debtor who defaulted in appearance in prior state court proceeding was precluded from raising usury defense in bankruptcy proceedings because debtor "clearly had the opportunity to appear in the state court action and raise the usury defense").

■ In this case, the allegedly usurious Note 1 was merged into the Confession of Judgment. A confession of judgment is regarded by New York law as a type of consent judgment, and when given without unlawful inducement a consent judgment is deemed to have been given consensually and voluntarily. *See, generally, Luboch v. Sidey's, Inc.,* 35 Misc.2d 410, 230 N.Y.S.2d 860 (N.Y.Sup.1962) (for a confession of judgment to be invalid it must be shown that it was given under duress, coercion or undue restraint).

The Higginses do not contend that they were caused to sign the Confession of Judgment under duress, coercion or by any other maneuver which would give this Court cause to question its voluntariness. By signing the Confession of Judgment the Higginses acknowledge their debt to Erickson and recite that the loans constitute "lawful debts." Thus executing a valid Confession of Judgment, the Higginses waived their defense that the interest rate on Note 1 was usurious.

**B. Res judicata**

The doctrine of res judicata bars the Higginses from challenging the Confession of Judgment and its underlying Notes in this Court.

■ As discussed in part II, *supra,* a valid confession of judgment is a judicial lien that "may be docketed and enforced in the same manner and with the same effect as a judgment in an action in the supreme court." N.Y. CPLR 3281(b) (McKinney Supp.2000). A confession of judgment "[s]tands in much the same position as one by stipulation or consent and is a conclusive adjudication of all matters embraced in it and a bar to any subsequent action on the same claim." *Canfield v. Elmer E. Harris & Co.,* 252 N.Y. 502, 170 N.E. 121 (1930). A confession of judgment is therefore treated as any other judgment rendered by a state court, and the Full Faith and Credit Act requires federal courts to give state court judgments the same "preclusive effect it would be accorded by the rendering state." *Nissan v. Weiss (In re Weiss),* 235 B.R. 349, 354 (Bankr.S.D.N.Y. 1999); *see also Kelleran v. Andrijevic,* 825 F.2d 692 (2d Cir.1987) (bankruptcy courts must respect lawfully-obtained state court judgments, even if the underlying claims are meritless).

■ A prior judgment will normally preclude further litigation of those issues which were actually litigated and determined, as well as matters which "although not expressly determined, are comprehended and involved in the thing expressly stated and decided, whether they were or were not actually litigated or considered." *Joseph Rubin & Sons, Inc. v. Waverly Construction Co., Inc.,* 97 N.Y.S.2d 753, 756 (N.Y.Sup.1950) (*quoting Pray v. Hegeman,* 98 N.Y. 351 [1885]).

■ When the Higginses signed the Confession of Judgment in the amount of $181,448.33, they explicitly agreed to the validity of Note 1 and Note 2. The Affidavit of Confession of Judgment signed by the Higginses states in part:

> This confession of judgment is *for a debt justly due* to the plaintiff arising from the following facts:
> This sum represents the aggregate net balance of two loans made to defendants by plaintiff dated February 4, 1998 and August 10, 1998. *These loans represent lawful debts of the defendants* for consideration actually received.

(emphasis supplied).

The Confession of Judgment given by the Higginses serves as a final judgment on Note 1 and Note 2, which were acknowledged in the text of the Confession of Judgment as "lawful debts." When the Higginses gave a signed Confession of Judgment confirming their liability on Note 1 and Note 2, the Confession of Judgment also "comprehended" that they would be required to pay 18% interest on Note 1 as comprising part of a lawful debt.

As a result, this Court is prohibited under the Full Faith and Credit Act from looking behind an enforceable judgment to consider the usury defense asserted by the Higginses.[4]

## IV. *Dischargeability*

■ The fourth issue before the Court is whether Erickson can contest the dischargeability of his claim once the applicable statute of limitations has expired. Essentially, Erickson asserts that the Higginses acted with "unclean hands" in their dealings with him and that, accordingly, he should be granted additional time to litigate this issue. In their motion for summary judgment, the Higginses argue that this counterclaim must be dismissed as it is time-barred.

■ In accord with the principles of the Bankruptcy Rules, deadlines that are set forth therein "are to be interpreted strictly and in a manner consistent with the Code's policies in favor of providing a fresh start for the debtor and prompt administration of the case." *Dombroff v. Greene (In re Dombroff),* 192 B.R. 615, 621 (S.D.N.Y.1996) (citing *Taylor v. Freeland & Kronz,* 938 F.2d 420 [3d Cir.1991], *aff'd,* 503 U.S. 638, 112 S.Ct. 1644 [1992]). If the burden of establishing a cause for extension of a time limit is not met by the moving party, the motion shall be denied. *In re Weinstein,* 234 B.R. 862, 866 (Bankr. E.D.N.Y.1999).

■ The time for filing complaints asserting non-dischargeability of debts under Section 523(c) is limited to 60 days from the first date set for the meeting of credi-

---

4. *Facility Planning, Inc. v. King (In re King),* 68 B.R. 569 (Bankr.D.Minn.1986), cited by the debtors, is inapplicable to these facts. *King* held that a usury defense was not barred where the borrower gave a confession of judgment on a loan bearing an interest rate of 162% per annum. The decision in *King* was based on Minnesota law, and the high interest rate (more than eight times higher than the interest rate in this case) shocked the conscience of the Court.

tcrs. Fed. R. Bankr.P. 4007(c). Rule 4007(c) also provides for an extension of this time period so long as a motion is made after a hearing on notice and before the time period has expired. *Id.* A court may extend time to file a complaint under Section 523(c) only insofar as Rule 4007(c) provides. Fed. R. Bankr.P. 9006(b)(3). The Second Circuit has embraced the theory that an extension of the time period imposed by Rule 4007(c) may be granted "if equity so requires." *European American Bank v. Benedict (In re Benedict),* 90 F.3d 50, 54 (2d Cir.1996). The Second Circuit relied upon *United States v. Locke,* 471 U.S. 84, 89 n. 10, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985), where the Supreme Court stated that "statutory filing deadlines are generally subject to the defenses of waiver, estoppel, and equitable tolling."

Erickson has not asserted that there is any issue as to waiver so it need not be evaluated with respect to the facts of the instant case. At this juncture, the question is whether equity requires sustaining the defenses of estoppel and equitable tolling that have been posed.

■■■ The rationale behind the doctrine of equitable tolling is that a statute of limitations should not start running until the plaintiff is aware she may have a cause of action. *See Cerbone v. International Ladies' Garment Workers' Union,* 768 F.2d 45, 48 (2d Cir.1985). Federal courts have exercised this doctrine where the movant had been misled or where evidence had been fraudulently concealed but have not been so generous where one does not act diligently in protecting his legal rights. *See State of New York v. Hendrickson Bros., Inc.,* 840 F.2d 1065, 1083 (2d Cir. 1988) (tolled statute of limitations where plaintiff acted diligently and failed to discover existence of claim as a result of defendant's intentional fraudulent concealment); *Baldwin County Welcome Ctr. v.*

*Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence."). Only where there is a fiduciary relationship can a plaintiff claim that a defendant had an obligation to inform him of the claim. *Zola v. Gordon,* 685 F.Supp. 354, 364 (S.D.N.Y.1988). Because Erickson has not submitted any evidence of a fiduciary relationship, the Court must assume that the relationship in this case is nothing more than an arm's length business transaction. Regardless, a movant must show that he has not "slept on his rights" before the court will use its equity power to toll the limitations period. *Holmberg v. Armbrecht,* 327 U.S. 392, 396, 66 S.Ct. 582, 90 L.Ed. 743 (1946).

■■■ Unlike equitable tolling, equitable estoppel is available when a plaintiff knows of his potential cause of action but delays filing suit as a result of the defendant's conduct. *See Cerbone,* 768 F.2d at 50. The rationale behind this equitable doctrine is to protect the person who brings their action after it would normally be barred because she was "lulled" into believing that she should delay pursuing her cause of action. *Cerbone,* 768 F.2d at 50; *see, e.g., Simcuski v. Saeli,* 44 N.Y.2d 442, 406 N.Y.S.2d 259, 377 N.E.2d 713 (1978). This doctrine is most often invoked when the relationship between the parties is of a fiduciary nature such as employee/employer. *Erbe v. Lincoln Rochester Trust Co.,* 13 A.D.2d 211, 213, 214 N.Y.S.2d 849 (4th Dep't 1961).

■■■ To equitably estop a party from interposing the defense that an action is time-barred, "a [movant] must show that: (1) the [non-movant] made a definite misrepresentation of fact, and had reason to believe that the [movant] would rely on it; and (2) the [movant] reasonably relied on that misrepresentation to his detriment."

*Buttry v. General Signal Corp.,* 68 F.3d 1488, 1493 (2d Cir.1995); *see also Bennett v. United States Lines, Inc.,* 64 F.3d 62, 65 (2d Cir.1995).

Erickson does not state clearly which facts he claims give rise to a cause to invoke equitable tolling or estoppel. Both equitable tolling and equitable estoppel address situations where a valid claim exists but is not pursued by the plaintiff within the statutory period because of the defendant's behavior. Erickson does not allege fraud or other misconduct which would have prevented the timely filing of an adversary proceeding objecting to dischargeability. The Higginses did not conceal or misrepresent their intent to claim that the Mortgage and Confession of Judgment impaired the Higginses' homestead exemption and were avoidable as preferences. In fact, the Higginses' attorney sent two letters to Erickson's counsel, the first letter dated less than one month after the petition was filed and the second dated 21 days before the last day to oppose dischargeability, stating with documentation that the Mortgage and Confession of Judgment impaired the Higginses' homestead exemptions, were avoidable as preferences and "should be vacated."

Erickson was aware of the deadline for filing an adversary proceeding objecting to discharge and was also aware that the Higginses would attempt to avoid the Mortgage and Confession of Judgment. Accordingly, neither equitable tolling nor equitable estoppel can be applied. Given the date of the petition, it is easily discernible that the instruments securing the debt were recorded within the preference period. Erickson could have filed his objection to dischargeability within the period set by the Rules or requested an extension of the period prior to its expiration. There is no basis for the Court to use its equity power to extend the time in which Erickson may file a complaint objecting to discharge of a debt under Section 523.

Counsel for the parties are directed to confer together to submit an order consistent with this decision agreed to as to form (without prejudice to any party's right to appeal).